390 P.2d 592

**WALKER BANK & TRUST COMPANY,**
a Utah corporation, Plaintiff
and Respondent,

**v.**

Spencer C. TAYLOR, Bank Commissioner of
the State of Utah, and State Bank of Provo,
a Utah corporation, Defendants and Appellants.

**No. 9947.**

Supreme Court of Utah.

March 25, 1964.

A. Pratt Kesler, Atty. Gen., H. Wright Volker, Asst. Atty. Gen., Fabian & Clendenin, Peter W. Billings, John F. Lee, Salt Lake City, for defendants and appellants.

Ray, Rawlins, Jones & Henderson, Salt Lake City, for plaintiff and respondent.

L. Tom Perry, Logan, amicus curiae.

CALLISTER, Justice.

This is a declaratory judgment action wherein Walker Bank & Trust Company seeks to have declared illegal and void an order of the Utah State Bank Commissioner granting State Bank of Provo the right to establish a branch bank in the city of Provo. The lower court ruled in favor of Walker and the Commissioner and State Bank of Provo now appeal therefrom.

Provo City is a city of the second class. State Bank of Provo is a unit bank and, at the time it made its application for the establishment of the branch, had only one banking house located in Provo. Prior to the granting of the application, which occurred on October 25, 1962, there were in existence two other banking institutions in Provo—a branch of Walker's and a branch of First Security of Utah, N. A. Walker had established its branch by taking over, by way of a merger in 1955, the Farmers' and Merchants' Bank, an existing unit bank. The record does not disclose in what manner First Security established its branch.

It is acknowledged that the State has the right and prerogative to regulate banks and banking within its jurisdiction. Therefore, the disposition of the problem here presented must be resolved by the interpretation of the applicable statutory law relating thereto. This law is found

in Section 7–3–6, U.C.A.1953, as amended. The pertinent provisions are as follows:

"The business of every bank shall be conducted only at its banking house and every bank shall receive deposits and pay checks only at its banking house *except as hereinafter provided.* * * * "

"Except in cities of the first class, or with unincorporated areas of a county in which a city of the first class is located, *no branch bank* shall be established in any city or town in which is located a *bank or banks,* state or national, regularly transacting a customary banking business, *unless the bank seeking to establish such branch shall take over an existing bank."* (Emphasis added.)

█ █ At the outset, it should be stated that we agree with the defendants' (Commissioner and State Bank of Provo) position that the words "bank or banks" as used in the foregoing quoted statutory provisions refer to unit banks and do not include branch banks. Thus, the mere presence of a branch bank in a city of the second class, which had no unit bank in existence, would not preclude the Commissioner from authorizing the establishment of a branch by another bank. The existence of the two branch banks in Provo would not prohibit the Commissioner from granting the application of State Bank of Provo for a branch in that city. However, there is a more difficult, and determinative, question as to whether the existence of State Bank of Provo, itself as a unit bank, precludes it from establishing a branch in Provo City. Defendants assert that an affirmative answer to this question would produce an absurd result.

Defendants urge that it was the intention of the legislature, in enacting the present law, to protect unit banks in the smaller communities from possible competition of large banking institutions establishing branches therein. Their argument is to the effect that the legislature could not have intended to protect a bank from its own competition. In other words, if there were only one banking institution in a city of less than the first class that bank, being a unit bank, would have the right to establish a branch in that municipality without first "taking over" an existing unit bank— when there was none. They point out that the statute does not expressly prohibit branching under the instant circumstances and, therefore, the granting of such a privilege is permissive within the discretion of the Commissioner.

█ We are of the opinion that our statute is restrictive and, what it does not expressly permit, it prohibits. There is but one method of establishing a branch bank in a city of less than the first class having an existing unit bank and that is

by "taking over" such bank.[1] The legislative history of branch banking is of great significance. In 1911, the legislature enacted a statute which absolutely prohibited branch banking.[2] It was not until 1933 that the legislature relaxed this prohibition and permitted branching under certain conditions and circumstances.[3] During the period between 1911 and 1933 the legislature evidently was of the opinion that branch banking was not in the public interest, possibly because it might impair the stability of the existing banks. This reasoning could well have influenced the law makers when they saw fit to allow branch banking, but only under certain restrictive conditions. This legislative history lends support to the proposition that what our branch banking laws do not permit they prohibit.

The legislative history also lends support to the proposition that a literal interpretation of the statute does not necessarily reach an absurd result. If the legislature has the power to prohibit branch banking entirely,[4] it necessarily follows that it may reasonably restrict the same. This court has ruled that if the literal wording of a statute clearly defeats the legislative intent and brings about an absurd result it need not be followed.[5] However, we do not think that this situation exists in the instance case.

■ First of all, it must be conceded that the statute under consideration is not ambiguous. Its literal wording would preclude the Commissioner from granting State Bank of Provo authority to establish the branch. Is this result absurd? We think not. Assume there to be two or more unit banks in a second class city, such as Provo, it could hardly be contended that, under the statute, one of these banks could establish a branch without "taking over" another existing unit bank. The fact that the competing bank or banks have been transformed into branches should not confer upon the remaining unit bank a right, which it did not theretofore possess, to establish a branch. In the instant case, no bank, including Walker and First Security, could establish a branch in Provo without first taking over State Bank of Provo—the only existing unit bank. It necessarily follows that State Bank of Provo cannot establish a branch within that city because there is no other existing unit bank which it could take over. Possibly, this might seem unreasonable but it cannot be deemed absurd. If any adjustment is desirable, the matter is one for the legislature and not this court.

1. Union Trust Co. v. Simmons, 116 Utah 422, 211 P.2d 190.
2. Laws of Utah, 1911, Ch. 25, Sec. 32.
3. Laws of Utah, 1933, Ch. 6.
4. At least six states now prohibit branch banking: Florida, Illinois, Oklahoma, Minnesota, Texas and West Virginia.
5. Johanson v. Cudahy Packing Co., 107 Utah 114, 152 P.2d 98.

At the time State Bank of Provo was granted its application, and at the time this action was instigated, there was in effect Section 7–1–26, U.C.A.1953,[6] which provided:

"Any person feeling aggrieved by the action, decision or ruling of the bank commissioner under this section may have the same reviewed by the state board of examiners, whose decision shall be final."

Defendants contend that, inasmuch as Walker's did not pursue the foregoing administrative procedure, it had no standing to bring the instant action. We agree that, under most circumstances, exhaustion of administrative remedies is required before legal action may be taken. However, this only applies where the discretion of an administrative officer or body, acting in pursuant to statutory directive, is in question. It does not apply when, as here, the administrative officer or body, acts without the scope of his or its defined statutory authority. The question here involved, being strictly one of law, is for the courts and an appeal to the board of examiners would have been futile and useless.

We are not impressed by defendants' argument that the branch banking statute must be interpreted in light of its prior administrative interpretation and application. Assuming the fact that the Bank Commissioner has in the past granted similar applications, such actions are not persuasive in this case to induce us to vary the very unambiguous terms of our branch banking statutes. This conclusion is bolstered by the fact that our legislature, apparently cognizant of the fact that the Bank Commissioner had erroneously granted some unit and branch bank applications, saw fit to enact, in 1953, a statute designed to ratify these actions.[7] However, it did not see fit to change the substantive provisions of the law pertaining to the establishment of branch banks. In fact, it expressly endorsed the restrictive provisions by enacting the following statute:[8]

"From and after the effective date (March 13, 1953) of this act no unit bank and no branch bank shall be established or authorized to conduct a banking business except as hereinafter in section 7–3–6 expressly provided."

Affirmed. Costs to plaintiff.

HENRIOD, C. J., and CROCKETT and WADE, JJ., concur.

McDONOUGH, J., does not participate.

6. This statute has since been repealed. Laws of Utah 1963, Ch. 7.

7. Laws of Utah 1953, Ch. 8, secs. 1 and 2.
8. Laws of Utah 1953, Ch. 8, sec. 3.