**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation, and AIG Aviation Insurance Services, a Georgia corporation, Petitioners–Appellees,**

v.

**M. Marjorie PRICE, duly appointed Personal Representative of the Estate of Macy Joseph Price, Jr., and the Estate of Macy Joseph Price, Jr., Respondents–Appellants.**

No. 02CA0736.

Colorado Court of Appeals,
Div. I.

May 8, 2003.

Rehearing Denied July 3, 2003.

Certiorari Granted Nov. 17, 2003.

----

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

Montgomery, Kolodny, Amatuzio & Dusabek, L.L.P., Joel A. Kolodny, David C. Fawley, Denver, Colorado, for Petitioners–Appellees.

Dickinson, Everstine & Prud'Homme, L.L.P., Gilbert A. Dickinson, Denver, Colorado; Cronin, Fried, Sekiya, Kekina & Fairbanks, L. Richard Fried, Jr., Honolulu, Hawaii, for Respondents–Appellants.

Opinion by Judge PIERCE.*

Respondents, M. Marjorie Price, personal representative of the estate of Macy Joseph Price, Jr., and the estate of Macy Joseph Price, Jr. (collectively Price), appeal the trial court's judgment enforcing an oral agreement to settle allegedly reached in mediation with National Union Fire Insurance Company of Pittsburgh and AIG Aviation Insurance Services (collectively the insurers). We reverse and remand for further proceedings.

Price asserted tort claims against the insurers over the death of Macy Joseph Price, Jr., in a private airplane crash.

A mediation session took place before a private mediator, and each party was represented by counsel. The insurers later asserted that Price orally accepted an alleged settlement during the mediation. Price asserted that no agreement had been finalized and refused to perform the alleged oral agreement.

The insurers asserted that the parties had reached a final oral settlement agreement and petitioned the court to enforce it. Price maintained that Colorado's Dispute Resolution Act, § 13–22–301, et seq., C.R.S.2002 (the Act), prohibited the court from enforcing the alleged oral agreement because the statute permits the enforcement of a mediated agreement only if the parties produce a signed, written agreement and present it to the court for approval. In addition, Price

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

objected that testimony from the mediator, Price, and the insurers about whether an oral settlement had been reached violated the provisions of the Act making mediation communications confidential and inadmissible in court.

The court concluded that the parties had reached a final oral agreement during mediation and that such an agreement was enforceable by the court.

Raising a question of first impression, Price contends that the Act does not permit the compelled enforcement of an oral agreement reached in mediation and that the trial court, therefore, erred in enforcing the alleged agreement. We agree.

Statutory interpretation is a matter of law, which we review de novo. *Colo. State Bd. of Accountancy v. Paroske,* 39 P.3d 1283 (Colo. App.2001).

When interpreting a statute, we must determine the intent of the General Assembly. *People v. Cooper,* 27 P.3d 348 (Colo.2001). If statutory language is clear and unambiguous, we must construe the statute as written, giving the ordinary meaning and the full effect to the words chosen. *City of Lakewood v. Mavromatis,* 817 P.2d 90 (Colo.1991).

■ We presume the General Assembly intended the entire statute to have effect and intended a just and reasonable result. Section 2–4–201(1)(b)–(c), C.R.S.2002; *People v. Luther,* 58 P.3d 1013 (Colo.2002). We must interpret a statute as a whole to give a consistent, harmonious, and sensible effect to all of its parts. If separate clauses within a statute can be reconciled using one interpretation, but would conflict under another, we adopt the interpretation that allows for consistency. *People v. Dist. Court,* 713 P.2d 918 (Colo.1986). And in ascertaining legislative intent, we examine all statutes or statutory provisions that apply to the subject matter. *R.E.N. v. City of Colorado Springs,* 823 P.2d 1359 (Colo.1992).

Only if the statute is ambiguous or portions of the statute may conflict do we look beyond the plain language of the statute to legislative history and other extrinsic factors. *People v. Cooper, supra.*

The Colorado Dispute Resolution Act governs the use of mediation as an alternative to litigation. It was enacted in 1983 and comprehensively amended in 1991. The Act applies to all mediation services or dispute resolution programs conducted in the state, including those conducted by a private mediator. *See* §§ 13–22–303, 13–22–312, C.R.S. 2002.

## I.

Most relevant to this dispute is § 13–22–308(1), C.R.S.2002, which sets forth how a mediated settlement agreement may become a court order:

> If the parties involved in a dispute reach a full or partial agreement, the agreement upon request of the parties shall be reduced to writing and approved by the parties and their attorneys, if any. If reduced to writing and signed by the parties, the agreement may be presented to the court by any party or their attorneys, if any, as a stipulation and, if approved by the court, shall be enforceable as an order of the court.

Here, the trial court interpreted this provision to mean that presenting a written agreement to the court for approval is just one way to obtain court enforcement of a settlement agreement. The court stated, "A fair reading of the statute does not ... prohibit the enforcement of clear, final oral agreements." We conclude otherwise.

■ We interpret the first sentence of § 13–22–308(1) to set out the initial requirements for a settlement agreement to be enforceable by a court. First the parties must reach some full or partial agreement. Second, all parties must agree to reduce the agreement to writing. Third, all parties must approve the writing.

The second sentence sets out still more conditions precedent to court enforcement. The written agreement must be signed by all parties. In addition, it must be presented to the court. Finally, the agreement shall become enforceable as an order of the court only after the court approves it.

■ Section 13–22–308(1) is the only provision in the Act that addresses settlements, and it provides detailed instructions about how to obtain court enforcement of a settlement agreement. The legislature chose to describe only one method for obtaining a court order, and we assume the omission of any other methods was intentional. Using the standard rule of statutory construction that the inclusion of one is the exclusion of others, *see City of Arvada v. Colo. Intergovernmental Risk Sharing Agency,* 19 P.3d 10 (Colo.2001), we conclude that § 13–22–308(1) describes the only method for obtaining court enforcement of a mediated settlement agreement. As such, court enforcement of an oral settlement agreement is necessarily barred.

This interpretation of § 13–22–308(1) is consistent with the stated goals of the 1991 amendment to the Act, which brought § 13–22–308(1) to its current form. The meaning of § 13–22–308(1) is plain. Our interpretation of it gives a consistent, harmonious, and sensible effect to all parts of the Act and accomplishes the legislature's stated goal of strengthening the confidentiality afforded to the mediation process.

## II.

■ Finally, we reject the trial court's conclusion that the Act bars admission of mediation communication to the same extent that the rules of evidence prohibit the admission of settlement discussions to prove negligence or liability. *See* CRE 408. At the conclusion of the hearing, the court stated that it read the Act "not to prevent proof of the existence of a settlement, but, rather, in the event of a failed settlement, to permit the use of statements or admissions that were made in the course of mediation negotiations."

The 1991 amendment struck from the Act the language that would have supported the trial court's conclusion. Before 1991, § 13–22–307(1) stated: "Mediation proceedings shall be regarded as settlement negotiations. . . ." Colo. Sess. Laws 1983, ch. 166 at 625. In its place, the General Assembly enacted § 13–22–307(2), which reflects the legislature's intent to distinguish mediation communication from general settlement negotiations by creating even stronger protections for mediation communication.

The 1991 addition of a definition of mediation communication further reinforces the legislature's intent to keep all stages of mediation confidential. "Mediation communication" is defined as:

> any oral or written communication prepared or expressed for the purposes of, in the course of, or pursuant to, any mediation services proceeding or dispute resolution program proceeding, including, but not limited to, any memoranda, notes, records, or work product of a mediator, mediation organization, or party; *except* that a written agreement to enter into a mediation services proceeding or dispute resolution proceeding, or *a final written agreement* reached as a result of a mediation service proceeding or a dispute resolution proceeding, *which has been fully executed, is not a mediation communication* unless otherwise agreed upon by the parties.

Section 13–22–302(2.5), C.R.S.2002 (emphasis added).

We note that § 13–22–302(2.5) harmonizes with § 13–22–307 in that both allow disclosure of mediation communication when the parties consent in writing. More importantly, the definition expressly excludes a "final written agreement" that has been "fully executed," which § 13–22–308(1) similarly recognizes as the only form of a mediated settlement agreement that a court can enforce.

Taken together, these sections express the legislature's intent to create a blanket prohibition against disclosing mediation communication, whether or not the communication concerns a settlement, unless the parties consent or an exception applies. Taking into consideration the bar against admitting mediation communication into evidence, it is logical, therefore, that the existence and terms of a settlement agreement could not be proved without a signed writing that reflects those terms.

We adopt the interpretation of the statute that allows for consistency, and we reconcile all three provisions by reading § 13–22–308(1) to prohibit court enforcement of oral

settlement agreements. *See People v. Dist. Court, supra.*

Finally, we do not agree that *South Carolina Insurance Co. v. Fisher,* 698 P.2d 1369 (Colo.App.1984), and *In re Custody of Nugent,* 955 P.2d 584 (Colo.App.1997), relied on by the insurers, require a contrary conclusion. Those cases did not involve settlements mediated pursuant to the Act.

Thus, we conclude that the trial court erred in enforcing the alleged oral agreement between Price and the insurers.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge VOGT and Judge GRAHAM concur.