2008 UT 7

**Murlyn Craig REESE, Plaintiff and Appellee,**

v.

**TINGEY CONSTRUCTION and/or Freemont Compensation Insurance Group, Defendants and Appellees,**

v.

**LWP Claims Solutions, Inc., Real Party in Interest and Appellant.**

No. 20060594.

Supreme Court of Utah.

Feb. 1, 2008.

C. Richard Henriksen, Jr., Robert M. Henriksen, Salt Lake City, for appellee.

Tim Dalton Dunn, Susan Black Dunn, S. Grace Acosta, Salt Lake City, for appellant.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 In this case, LWP Solutions, Inc. (LWP) appeals from a trial court order requiring its attorney Grace Acosta to appear and be deposed regarding the content of the mediation proceeding in which she allegedly reached a settlement on LWP's behalf with Murlyn Craig Reese. We are asked to determine whether Acosta's testimony regarding the content of the mediation is protected from disclosure by laws governing confidentiality in mediation and whether Utah law requires agreements reached during mediation to be reduced to writing in order for them to be enforceable by a court. We conclude that the content of the mediation is confidential and that mediation agreements must be reduced to writing in order to be enforceable. Thus, we reverse.

## BACKGROUND

¶ 2 On May 24, 2000, Murlyn Craig Reese fell from a third-story balcony and significantly injured his leg when the temporary railing he was leaning on gave way. At the time of the accident, Reese was working for Interwest Mechanical, a subcontractor of Tingey Construction. Because his injuries occurred within the scope of his employment, Freemont Compensation Insurance, Interwest Mechanical's workers compensation insurance carrier, provided coverage for the medical expenses relating to the injury.

¶ 3 In 2003, Freemont went into liquidation and, pursuant to Utah Code section 31A–28–202 to –222 (2005 & Supp.2007), the Utah Property and Casualty Insurance Guaranty Association (UPCIGA) assumed financial responsibility for Reese's medical expenses. UPCIGA retained LWP to make payments for Reese's medical expenses using UPCIGA funds.

¶ 4 On May 18, 2004, Reese filed suit against Tingey Construction, alleging that it negligently constructed the railing and that absent the negligence, Reese would not have

fallen. Reese and Tingey Construction voluntarily agreed to try to settle their dispute through mediation on December 30, 2005. As Reese's insurance carrier, UPCIGA had a subrogation interest in any settlement proceeds, and LWP acted as UPCIGA's agent at the mediation to protect that interest. Reese alleges that he and LWP made an oral agreement to settle and that he relied on that agreement in reaching agreement with Tingey Construction. When the mediator incorporated the terms of both agreements into a Memorandum of Understanding (Memorandum), LWP refused to sign because, according to LWP, the Memorandum included a term to which it did not agree.

¶ 5 Reese and Tingey Construction filed a Joint Motion to Enforce Settlement. LWP argued that no agreement was made and that Utah Code section 78–31b–8 (Supp.2007) prohibits Reese from revealing confidential mediation communications. The trial court found that "[m]ediation discussions contain 'confidential' and 'non-confidential' discussions" and that the alleged agreement between Reese and LWP was nonconfidential. Based on those findings, the trial court ordered LWP's mediation counsel, Grace Acosta, to "appear and be deposed regarding the content of the mediation … including the process of the mediation and the conversations and agreements that were made during the mediation." LWP filed a petition for discretionary interlocutory appeal with this court, seeking to preserve the confidentiality of the mediation discussions and to prevent Acosta from being deposed. We granted the petition.

## STANDARD OF REVIEW

■ ¶ 6 We are asked to determine whether Utah Code section 78–31b–8 (Supp.2007) requires that discussions among participants in a mediation relating to an alleged oral agreement be kept confidential and whether the Utah Rules of Court–Annexed Alterna-

tive Dispute Resolution require agreements reached in the course of a mediation to be reduced to writing. Both issues are matters of statutory construction and thus present questions of law that we review for correctness. *Anderson v. United Parcel Serv.*, 2004 UT 57 ¶ 7, 96 P.3d 903. We have jurisdiction over interlocutory appeals pursuant to Utah Code section 78–2–2(3)(j) (2002).

## ANALYSIS

I. UTAH'S ALTERNATIVE DISPUTE RESOLUTION ACT PROTECTS AGAINST DISCLOSURE OF MEDIATION COMMUNICATIONS, AND THEREFORE, MS. ACOSTA MAY NOT BE DEPOSED REGARDING THE CONTENT OF THE MEDIATION

■ ¶ 7 As a preliminary matter, we note that in his brief before this court, Reese argued that the oral agreement he claims to have reached with LWP was not reached within the context of the mediation and is therefore governed strictly by contract law and not by mediation rules. The argument that LWP was not a party to the mediation was not raised before the trial court.[1] Absent plain error by the trial court or exceptional circumstances, neither of which have been argued by Reese, we will not consider the question. *State v. Rhinehart*, 2007 UT 61, ¶ 21, 167 P.3d 1046.

■ ¶ 8 As a participant, LWP is entitled to the benefits of the laws governing mediation, which direct that mediation proceedings are designed to "encourage[ ] informal and confidential exchange among the persons present to facilitate resolution of the dispute." Utah Code Ann. § 78–31b–8 (Supp. 2007). "Confidentiality of all communications between the parties or among them and the mediator serves the important public policy of promoting a broad discussion of potential

1. LWP's June 1, 2006 Motion to Intervene in the underlying lawsuit was granted on July 10, 2006, roughly six months after the mediation occurred. The Minute Entry granting the LWP's motion states, "[I]t appears that LWP Solutions has already been functioning as a party to this matter, including participating in the parties' media-

tion." Additional documents in the record below, including Reese's attorney's affidavit and Reese's motion to enforce the alleged oral agreement, suggest that it was also Reese's understanding that LWP was a party to the mediation. In any event, no contrary position was taken by Reese below.

resolutions to the matters being mediated." *Wilmington Hospitality, L.L.C. v. New Castle County,* 788 A.2d 536, 541 (Del.Ch.2001). This candid exchange of information and ideas can be achieved only when the parties are assured that their communications will be protected from postmediation disclosure. The U.S. Court of Appeals for the Second Circuit, in discussing the importance of confidentiality during preargument conferences designed for the purpose of considering settlement or simplification of the issues, stated as follows:

> It is essential to the proper functioning of the Civil Appeals Management Plan that all matters discussed at these conferences remain confidential. The guarantee of confidentiality permits and encourages counsel to discuss matters in an uninhibited fashion often leading to settlement. . . . If participants cannot rely on the confidential treatment of everything that transpires during these sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tight-lipped, noncommittal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness of a program which has led to settlements and withdrawals of some appeals and to the simplification of issues in other appeals, thereby expediting cases at a time when the judicial resources of this Court are sorely taxed.

*Lake Utopia Paper Ltd. v. Connelly Containers, Inc.,* 608 F.2d 928, 930 (2d Cir.1979) (internal quotation marks and citation omitted).

¶ 9 We recognize existing statutory exceptions to this general rule of mediation confidentiality. For example, all parties to a mediation, including the mediator, can agree to disclose information, such as memoranda, notes, records, or work product, that is obtained during the mediation. *See* Utah Code Ann. § 78–31b–8(4). A written agreement resulting from the mediation, signed by all the parties, may be filed with a court and enforced as a judgment of the court. *Id.*

§ 78–31b–7(3)(a). Other specific exceptions, such as discovery of child abuse or neglect, also require disclosure. *See id.* § 78–31b–8(6). We further recognize that in certain circumstances, for example, if duress, fraud, or another credible contract defense is alleged, the interests of justice may outweigh the parties' need for confidentiality in determining whether a settlement agreement was reached. None of these exceptions applies in this case.

¶ 10 The trial court's June 2006 Order concluding that "[m]ediation discussions contain both 'confidential' and 'non-confidential' discussions" and ordering Acosta to submit to a deposition "regarding the content of the mediation," including "the process of the mediation and conversations and agreements that were made in the mediation" conflicts with the laws and policy considerations outlined above. If, as indicated by the trial court's order, nonconfidential portions of the mediation include the content, process, conversations, and agreements of the mediation, it is hard to see what portion of the mediation would remain confidential. Furthermore, a practice of permitting courts to undertake the kind of after the fact sorting exercise necessitated by the trial court's order could jeopardize mediation participants' willingness to freely engage in settlement-inducing dialogue, thus undermining a primary requirement of successful mediation. *Ryan v. Garcia,* 27 Cal.App.4th 1006, 33 Cal.Rptr.2d 158, 161 (1994) ("[T]he risk of this judicial sifting [to select which statements can be used as evidence of an agreement] would deter some litigants from participating freely and openly in mediation.").

¶ 11 Additionally, Utah Code section 78–31b–8(4) prohibits any "person attending an ADR proceeding . . . [from] disclos[ing] or be[ing] required to disclose any information obtained in the course of an ADR proceeding" unless all parties and the mediator agree otherwise. Under this rule, unless LWP consents, along with Reese, Tingey Construction, and the mediator, Acosta is prohibited from disclosing information obtained during the mediation, including information related to the alleged existence of an oral agreement. The Utah Court of Appeals,

in remanding a case where a party similarly sought to enforce an oral agreement allegedly reached during a mediation, forcefully stated, "[N]either counsel nor parties may disclose to *any* court, in argument, briefs, *or otherwise,* statements or comments made during the [ ] mediation." *Lyons v. Booker,* 1999 UT App. 172, ¶ 7, 982 P.2d 1142. Because LWP has not agreed to the disclosure Reese requests and because no other exception to the mediation privilege applies, Acosta may not be required to testify regarding the alleged existence of an oral agreement. Accordingly, we vacate the trial court's order requiring Acosta to appear and be deposed regarding the content of the mediation.

## II. AGREEMENTS REACHED IN THE COURSE OF MEDIATION MUST BE REDUCED TO WRITING IN ORDER TO BE ENFORCEABLE BY A COURT[2]

■ ¶ 12 Utah Code section 78–31b–7(3)(a) (Supp.2007) provides that "any settlement agreement between the parties as a result of mediation may be executed in writing, filed with the clerk of the court, and enforceable as a judgment of the court." While this statute recognizes that parties are free to enter into an agreement that is not executed in writing ("any settlement agreement ... *may* be executed in writing" (emphasis added)), only agreements executed in writing will be "enforceable as a judgment of the court." A court cannot enforce the terms of an oral agreement reached in mediation without requiring parties to disclose, and the court to consider, confidential settlement negotiations. Absent the existence of an exception, *see supra* ¶ 9, we are not prepared to invade the confidentiality protections afforded parties to mediation in this manner. A rule permitting courts to enforce only written mediation agreements operates in tandem with the rules providing mediation confidentiality. The existence of an executed agreement provides a court with the means to use its power to enforce the terms of a written agreement or to determine whether the terms of the written agreement have been violated without requiring it to delve into the confidential process that led to the creation of the agreement.[3] The National Conference

2. We requested supplemental briefing from the parties regarding application of the Utah Uniform Mediation Act (UUMA), Utah Code section 78–31c–101 to –114, which became effective May 1, 2006, roughly five months after the mediation at issue in this case. The UUMA provides that "on or after May 1, 2007, this chapter governs all agreements to mediate whenever made." Utah Code Ann. § 78–31c–114(2) (Supp.2007). In their supplemental briefs, both Reese and LWP responded that the UUMA does not apply in this case. In light of the parties' concurrence on this issue, this opinion will not apply the UUMA but should not be understood to conclude one way or the other as to whether the UUMA would otherwise be applicable.

3. Courts in California, Colorado, Delaware, Florida, and Indiana have held that courts are precluded from inquiring into alleged oral agreements purportedly reached during mediation. *See, e.g., Ryan v. Garcia,* 27 Cal.App.4th 1006, 33 Cal. Rpt.2d 158, 161–62 (1994) (holding that statements made in the course of a mediation concerning the existence of an alleged settlement agreement were inadmissible as evidence in accordance with a provision of the state evidence code); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Price,* 78 P.3d 1138, 1141 (Colo.Ct.App.2003) (interpreting Colorado's dispute resolution act's provision for court enforcement of only written mediation agreements as an intentional omission by the legislature regarding enforcement of oral agreements); *Wilmington Hospitality, L.L.C. v. New Castle County,* 788 A.2d 536, 541–42 (Del. Ch.2001) (holding that "it is inconsistent with the public policy favoring voluntary mediation for a court to entertain a motion to enforce a mediated settlement agreement that is not reduced to writing and signed by the parties to the mediation" and stating that "such a bright-line rule is the best way to protect the confidentiality of the mediation when disputes arise over the terms of a putative settlement"); *Gordon v. Royal Caribbean Cruises Ltd.,* 641 So.2d 515, 517 (Fla.Dist.Ct. App.1994) (holding that a settlement agreement reached during mediation is binding only if it has been reduced to writing and signed by the parties to the agreement); *Cohen v. Cohen,* 609 So.2d 785, 786 (Fla.Dist.Ct.App.1992) ("An oral agreement reached during mediation is inadmissible as privileged unless it has been reduced to writing."); *Hudson v. Hudson,* 600 So.2d 7, 9 (Fla. Dist.Ct.App.1992) (holding that various disclosures of discussion "vis-a-vis agreements between the parties" violated the mediation confidentiality statute and that the "confidentiality of the negotiations should remain inviolate until a written agreement is executed by the parties"); *Vernon v. Acton,* 732 N.E.2d 805, 809 (Ind.2000) (holding that while settlement agreements generally do not need to be in writing to be enforceable, settlement agreements "reached in mediation ... shall be reduced to writing and signed" (internal quotation marks omitted)); *Spencer v.*

of Commissioners on Uniform State Laws explained in a comment to the Uniform Mediation Act that oral agreements were intentionally not included in the list of exceptions to mediation privilege. The comment states:

> This exception [for written agreements] is noteworthy only for what is not included: oral agreements. The disadvantage of exempting oral settlements is that nearly everything said during a mediation session could bear on either whether the parties came to an agreement or the content of the agreement. In other words, an exception for oral agreements has the potential to swallow the rule of privilege.

Nat'l Conf. of Comm'rs on Unif. State Laws, Uniform Mediation Act, Section 6, Reporter's cmt. 2, Section 6(a)(1), Record of an agreement (Aug.2003). Although we are not applying the rules contained in either the Uniform Mediation Act or the UUMA in this case,[4] *see supra* note 2, the policy underlying the comment included by the drafters of the Uniform Mediation Act is reflective of our analysis and of our conclusion that a court can enforce only a mediation agreement that has been reduced to writing.

¶ 13 A writing requirement also encourages parties to prepare a comprehensive, final settlement agreement free from misunderstandings and ambiguities. This is particularly important in the mediation context where "parties are often encouraged to consider hypothetical solutions to their dispute" creating an "informal atmosphere" where "parties need to be reminded of the import of their final nods of assent [and s]igning a writing is a simple formality that most people understand as a binding act." Ellen E. Deason, *Enforcing Mediated Settlement Agreements: Contract Law Collides with Confidentiality*, 35 U.C. Davis L.Rev. 33, 76–77 (2001); *see also Vernon*, 732 N.E.2d at 810 ("Requiring written agreements, signed by the parties, is more likely to maintain mediation as a viable avenue for clear and enduring dispute resolution rather than one leading to further uncertainty and conflict."). Requiring a writing also permits parties to "ferret out" areas where additional clarification is necessary. Although declining to adopt a bright-line rule requiring that mediation agreements be reduced to writing, the court in *Catamount Slate Prods. v. Sheldon*, 176 Vt. 158, 845 A.2d 324 (2003), noted how the process of reducing an agreement to writing often raises additional issues necessary to the resolution of a dispute.[5] In quoting the Second Circuit, the Vermont Supreme Court explained, " '[T]he actual drafting of a written instrument will frequently reveal points of disagreement, ambiguity, or omission which must be worked out prior to execution. Details that are unnoticed or passed by in oral discussion will be pinned down when the understanding is reduced to writing.' " *Id.* ¶ 23 (quoting *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 82 (2d Cir.1986)).

■ ¶ 14 A core principle of mediation is the notion of party autonomy, founded on the belief that the parties in conflict are best suited to resolve their dispute in a way that fits their needs and interests. While traditional contract laws, under certain circum-

---

*Spencer*, 752 N.E.2d 661, 665 (Ind.Ct.App.2001) (holding that the trial court erred in enforcing an alleged mediation agreement that had not been reduced to writing, signed by the parties, and approved by the trial court).

In contrast, courts in North Carolina and Oregon have enforced oral settlement agreements reached during mediation. *See, e.g., Few v. Hammack Enters.*, 132 N.C.App. 291, 296, 511 S.E.2d 665 (1999) (permitting a judge to make a determination of whether a settlement was reached during a mediated settlement conference and the terms of that settlement); *Kaiser Found. Health Plan of the Northwest v. Doe*, 136 Or.App. 566, 903 P.2d 375, 378 (1995) (applying traditional contract law to enforce an oral agreement reached during mediation and stating, "We can find no authority that supports the proposition that settlements reached during mediation should receive special treatment or be analyzed differently from settlements reached in other settings").

**4.** The UUMA contains substantially the same language as that suggested by the National Conference of Commissioners on Uniform State Laws in the Uniform Mediation Act.

**5.** The court ultimately refused to enforce the oral agreement, in part because the parties' agreement to mediate that governed the mediation "clearly contemplate[d] that any settlement agreement ... would be binding only after being put in writing and signed." *Catamount Slate Prods. v. Sheldon*, 176 Vt. 158, 845 A.2d 324, 329.

stances, permit courts to enforce oral agreements, we do not think this is an appropriate role for courts when the putative agreement was reached within the context of a mediation. A writing requirement both honors autonomy and provides an added means of producing a workable and durable agreement. In this case, disclosure of confidential mediation information by the parties in their briefs and throughout the record below is troublesome. Conduct and statements made in the course of a mediation are not admissible in a later court proceeding. Utah Code Ann. § 78–31b–8(2) ("No evidence concerning the fact, conduct, or result of an ADR proceeding may be subject to discovery or admissible at any subsequent trial of the same case or same issues between the same parties."). We are concerned, in the context of the statutory mandate of confidentiality, by the ease with which the parties and the trial court discussed mediation communications. We hope this opinion will put future litigants and courts on notice that the statutory bar is to be carefully observed. With respect to this case, we order the portions of the record disclosing confidential mediation information sealed and further order that any of the trial judges who have reviewed confidential information from the mediation in this case recuse themselves from further proceedings. *See Lyons v. Booker*, 1999 UT App 172, ¶ 9, 982 P.2d 1142 (ordering "the judges hearing this motion, having reviewed the moving papers in question, [ ] recused from further proceedings").

### CONCLUSION

¶ 15 In reversing the trial court order requiring Acosta to be deposed regarding the content of the mediation between Reese, Tingey Construction, and LWP, we expressly recognize the importance of maintaining confidentiality in the mediation process and hold that Utah law requires agreements reached in mediation to be reduced to a writing and signed by all the parties to the agreement in order for the agreement to be enforceable by a court.[6]

6. We note that a writing via various electronic media, such as an email exchange between the parties in which they agree to particular provisions or a recording in which the parties affirmatively state what constitutes their agreement, would satisfy this requirement.

¶ 16 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.