2008 UT 31

**SALT LAKE CITY MISSION and Pastor Wayne Wilson, Plaintiffs and Appellants,**

v.

**SALT LAKE CITY, Mayor Rocky Anderson, former Major Deedee Corradini, Salt Lake City Redevelopment Agency, Sherrie B. Reich, B.L. Smith, Randy Taylor, Marge Harvey, Kim Guess, Alicia Orgill and John Does I–LX, Defendants and Appellees.**

No. 20060962.

Supreme Court of Utah.

April 22, 2008.

Matthew Hilton, Kaysville, Jacqueline F. de Gaston, Orem, for plaintiffs.

Evelyn J. Furse, Lynn H. Pace, J. Wesley Robinson, Salt Lake City, for defendants.

WILKINS, Justice:

¶ 1 Appellants Salt Lake City Mission and Wayne Wilson claim that Salt Lake City and various of its officers and employees have violated the Mission's religious freedom under both the Utah and federal constitutions. We hold that the Mission's claims under the Utah Constitution were properly dismissed because the Mission failed to exhaust its administrative remedies. We further hold that the Mission's claims under the federal constitution are not ripe, and were thus also properly dismissed. We therefore affirm the decision of the district court.

## BACKGROUND

¶ 2 Salt Lake City Mission, founded by Pastor Wilson, (collectively "the Mission") opened in 1996. The Mission provided religious services and temporal resources to homeless and needy persons suffering from addiction problems. After moving from its original location, the Mission considered a number of relocation properties, including five which are relevant to this appeal.

¶ 3 The Mission's planned use at each location included a "conditional use" under the relevant zoning ordinances, thus requiring the Mission to obtain a conditional use permit ("CUP"). The Mission claims that the City prevented it from applying for CUPs for four of the locations. The Mission did apply for a CUP for the fifth location, which the planning commission denied. The Mission alleges that this decision was affected by the City acting in violation of relevant zoning ordinances. The Mission did not appeal the planning commission's decision.

¶ 4 The Mission subsequently filed suit against the City, alleging that the City's actions had violated the Mission's right to the free exercise of religion under the state and federal constitutions. The City filed a summary judgment motion, arguing that the Mission's claims were not justiciable. In a memorandum decision, the district court held that the Mission had failed to exhaust its administrative remedies and that its federal claims

were not ripe. The district court therefore dismissed all of the Mission's claims. The Mission appeals that decision.

## STANDARD OF REVIEW

¶ 5 We review a grant of summary judgment for correctness, granting no deference to the district court's legal conclusions. *Bowman v. Kalm,* 2008 UT 9, ¶ 6, 179 P.3d 754. "[W]e view the facts in the light most favorable to the non-moving party." *Id.* (internal quotation marks omitted). Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c).

## ANALYSIS

### I. THE EXHAUSTION REQUIREMENT

¶ 6 Under Utah law, there is a specific exhaustion requirement with regard to land use decisions: "No person may challenge in district court a municipality's land use decision ... until that person has exhausted the person's administrative remedies...." Utah Code Ann. § 10–9a–801(1) (Supp.2007). "Where the legislature has imposed a specific exhaustion requirement ... we will enforce it strictly." *Patterson v. Am. Fork City,* 2003 UT 7, ¶ 17, 67 P.3d 466. Strict enforcement of this provision dictates that if a party "fails to exhaust [its] administrative remedies prior to filing suit, the suit must be dismissed." *Id.* ¶ 16.

¶ 7 The process for obtaining a CUP requires, among other things, filling out an application with information as to the location and the proposed use, appearing before the relevant community council regarding the proposed use, and including with the application a signed statement to the effect that the community council presentation was made. Salt Lake City, Utah, City Code § 21A.54.060(A) (2007). After the application is complete, it is submitted to the planning commission, which holds a public hearing on the proposed permit. *Id.* § 21A.54.060(E). If the planning commission denies the conditional use, then the aggrieved party may appeal the decision to the

Land Use Appeals Board within thirty days. *Id.* § 21A.54.160.

¶ 8 In this case, the Mission failed to exhaust its administrative remedies. With regard to four of the properties, the Mission did not file CUP applications. As to one of those sites, the Mission claims it was unable to apply because the City failed to notify the relevant community council of the Mission's need to be on the agenda; in reference to two others, the Mission claims the City failed to provide it with a "mandatory form" used in the application process to verify the applicant's appearance before the community council; with the fourth site, the Mission states that it was prevented "from qualifying for permitted use" because the City issued an administrative interpretation letter regarding the proposed use prior to their applying for a CUP.[1]

¶ 9 It may be that these alleged actions by the City would have rendered a submitted application incomplete. Nevertheless, a party cannot claim that they have exhausted their administrative remedies before even an *attempt* to file an application has been made, absent truly extraordinary circumstances, which are not present in this case.

¶ 10 The Mission did file a CUP application for the fifth location. Although the Mission could have appealed the planning commission's decision to the Land Use Appeal Board, it failed to do so. By failing to file CUP applications for four of the sites, and by not appealing the adverse administrative decision regarding the fifth location, the Mission failed to exhaust the available administrative remedies.

¶ 11 We have previously noted a number of exceptions to the exhaustion require-

ment "in unusual circumstances." *Nebeker v. Utah State Tax Comm'n,* 2001 UT 74, ¶ 14, 34 P.3d 180. Exhaustion is not required where (1) there is irreparable injury, *see Patterson,* 2003 UT 7, ¶ 20, 67 P.3d 466; (2) there is a likelihood of oppression or injustice, *see Nebeker,* 2001 UT 74, ¶ 14, 34 P.3d 180; (3) exhaustion would serve no purpose, or is futile, *see id., see also Patterson,* 2003 UT 7, ¶ 20, 67 P.3d 466; or (4) an administrative agency or officer has acted outside of the scope of its defined, statutory authority, *see Walker Bank & Trust Co. v. Taylor,* 15 Utah 2d 234, 390 P.2d 592, 595 (1964).

¶ 12 The Mission argues that the City's actions have caused it irreparable injury by restricting its constitutional right to the free exercise of religion. The Mission further argues that it should not be required to exhaust its administrative remedies because the City's actions have been oppressive and unjust, and because its past experience has shown that taking further administrative steps would be futile.[2] The Mission has failed to establish, however, that any of these exceptions apply here.

¶ 13 In *Patterson,* this court stated:

[The Pattersons] have argued that they would suffer irreparable harm if required to exhaust administrative remedies, and that the exhaustion process would be futile. In support thereof, Pattersons offer only the cursory assertion that City officials are hostile to their rights and that they have clearly pleaded sufficient facts indicating irreparable harm and the futility of any future attempts [to pursue administrative remedies]. We decline the apparent invitation to peruse Pattersons' lengthy list of allegations in search of specific facts supporting their claims of irreparable

---

1. The Mission also asserts that another administrative use letter, which like the first was issued in violation of the relevant zoning ordinances, impacted the planning commission's decision on the fifth location.

2. The Mission also asserts that certain of the City's actions were outside the scope of its defined, statutory authority, including issuing an administrative interpretation letter without a request by the Mission or payment of the fee—both of which are required under the relevant ordinance. Salt Lake City, Utah, City Code

§§ 21A.12.010, .030, .040 (2007); *see Walker Bank & Trust Co. v. Taylor,* 15 Utah 2d 234, 390 P.2d 592, 595 (1964). Issuing such a letter, however, is an action that falls within the agency's authority. That certain procedures may not have been followed, or requirements met, does not mean that the action falls without the agency's authority. *See Walker Bank,* 390 P.2d at 595 (describing a situation where the administrative officer acted contrary to the "literal wording" of the statute).

harm and futility. We note only that allegations of unfairness in the day-to-day relationship between Pattersons and City staff do not support a claim that the entire administrative appeals process is inoperative or unavailable.

*Patterson,* 2003 UT 7, ¶ 20, 67 P.3d 466 (internal quotation marks omitted). The Mission has not shown that the City's administrative appeals process is inoperative. Moreover, it has not shown that any of the exceptions to the exhaustion requirement apply. Instead, the Mission has asserted that certain minor regulations and "informal standard practices" were not followed. Such a showing may, on its merits, constitute a valid claim, but is insufficient to show that the irreparable harm,[3] oppression, or futility exceptions apply. Accordingly, the district court was correct in dismissing the state constitutional claims because the exhaustion requirement had not been met.

## II. RIPENESS

¶ 14 The exhaustion requirement does not apply to claims asserted under the federal constitution. *Patterson,* 2003 UT 7, ¶ 18, 67 P.3d 466. Federally based claims must be ripe, however, in order to be justiciable under the case or controversy requirement of Article III of the federal constitution. *Anderson v. Green,* 513 U.S. 557, 559, 115 S.Ct. 1059, 130 L.Ed.2d 1050 (1995) ("[N]o justiciable controversy is before us, because the case in its current posture is not ripe."); *see* U.S. Const. art. III, § 2. The United States Supreme Court has stated that one of the purposes of the ripeness requirement is "to protect [administrative] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

¶ 15 "[T]he Supreme Court has developed specific ripeness requirements applicable to land use disputes." *Murphy v. New Milford Zoning Comm'n,* 402 F.3d 342, 347 (2d Cir. 2005). Our court of appeals has correctly

acknowledged these requirements. *Arnell v. Salt Lake County Bd. of Adjustment,* 2005 UT App 165, ¶ 19, 112 P.3d 1214 ("'As a general rule, until these ordinary processes have been followed the extent of the restriction on property is not known ....'" (quoting *Palazzolo v. Rhode Island,* 533 U.S. 606, 621, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001))).

¶ 16 In another free exercise claim involving land use decisions, the Second Circuit Court of Appeals noted that the U.S. Supreme Court has held that a developer "was required to obtain a final, definitive position ... from the entity charged with implementing the zoning regulations." *Murphy,* 402 F.3d at 348. The *Murphy* court noted four considerations which supported its decision to require a "final, definitive" administrative decision before deciding the case on its merits:

> First, ... requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record. Second, and relatedly, only if a property owner has exhausted the [administrative] process will a court know precisely how a regulation will be applied to a particular parcel. Third, a [favorable decision] might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes.... Finally, ... federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.

*Id.* (citations omitted). We agree with the reasoning of the Second Circuit. As noted above, the Mission has failed to obtain a final decision on any of the five locations at issue. Additionally, it has offered no compelling reason why obtaining such a decision would be unfair or unreasonable. Its claims under the federal constitution are therefore not ripe, and the district court was correct to dismiss them.

---

3. Additionally, we note particularly that the fact that an adverse zoning decision affects a party's religious practice does not itself constitute an irreparable injury.

## CONCLUSION

¶ 17 The Mission failed to exhaust its administrative remedies, and has not shown that any of the exceptions to the exhaustion requirement are applicable. The state constitutional claims were therefore properly dismissed. The Mission's claims based upon the federal constitution are not ripe. Those claims, therefore, were also properly dismissed. Affirmed.

¶ 18 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice WILKINS' opinion.