**2022 UT App 123**

# THE UTAH COURT OF APPEALS

TOOELE COUNTY,
Appellant,
*v.*
ERDA COMMUNITY ASSOCIATION,
Appellee.

Opinion
No. 20210711-CA
Filed November 10, 2022

Third District Court, Tooele Department
The Honorable Dianna Gibson
No. 210300358

Robert C. Keller, Danica N. Cepernich, and
Nathanael J. Mitchell, Attorneys for Appellant

Janet M. Conway, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN D. TENNEY concurred.

HARRIS, Judge:

¶1      In 2019, the Tooele County Planning Commission (the Commission) gave its "conceptual approval" to a developer's plans to develop two parcels of land, an action that drew spirited resistance from certain members of the community. In particular, over one hundred individual residents of the then town of Erda[1] filed a joint administrative appeal challenging the Commission's

---

1. Erda is now a city, having completed the incorporation process in January 2022. At the time the administrative appeals were filed, though, Erda was still officially a town. *See* https://en.wikipedia.org/wiki/Erda,_Utah [https://perma.cc/8B4T-YJ6G].

action. The Tooele County Council (the Council), acting as the administrative appeal authority, rejected those appeals.

¶2      Thereafter, the Erda Community Association (the Association) filed a petition in district court seeking judicial review of the Council's decision. Some of the individuals who had participated in the joint administrative appeal of the Commission's action are members of the Association, but the Association had not itself filed any such appeal; recognizing this, Tooele County (the County) asked the district court to dismiss the Association's petition for failure to exhaust administrative remedies. The court agreed with the County that the Association had failed to exhaust its administrative remedies, but nevertheless denied the County's motion, determining that at least one exception to the exhaustion requirement applied here. We granted the County leave to file an interlocutory appeal from the district court's order denying its motion to dismiss, and on the merits of that appeal, we agree with the County: the Association failed to exhaust its administrative remedies and no exception to the exhaustion requirement applies. On that basis, we reverse.

BACKGROUND[2]

¶3      The Association describes itself as "a member-based community non-profit organization formed to preserve rural

---

2. "When reviewing a district court's denial of a . . . motion to dismiss, we accept the factual allegations in the complaint as true and draw all reasonable inferences from those facts in a light most favorable to" the plaintiff or petitioner. *First Equity Fed., Inc. v. Phillips Dev., LC*, 2002 UT 56, ¶ 3, 52 P.3d 1137 (quotation simplified). Accordingly, in considering the County's appeal, and in reciting the facts herein, we accept the factual allegations in the Association's petition as true and draw reasonable inferences from those facts in a light most favorable to the Association.

property in Erda, and to support . . . efforts to incorporate the City of Erda." Its "members are residents of" Erda, a municipality located in Tooele County. Among other things, the Association "brings legal actions to challenge local municipalities" when it perceives that "their actions do not comply with the law and cause irreparable harm to Erda's rural and agricultural lifestyle."

¶4 In recent years, a developer (Developer) has taken steps to try to develop two parcels of land in Tooele County.[3] In furtherance of those efforts, Developer filed two conditional use permit applications with the Commission. In December 2019, after holding a public hearing, the Commission gave its "conceptual approval" to both applications.

¶5 The following month, the County received one administrative appeal regarding each of the Commission's two "conceptual approvals." In each appeal, the identity of the appellants was identical: some 125 residents of Erda signed them, and did so in their individual capacities. No corporate or business entity—including the Association—was listed as a party to either of these appeals. But at least some of the individual appellants were (and apparently still are) members of the Association.

¶6 Later, the Council—acting as the County's administrative appeal authority—held a public meeting to consider the residents' administrative appeals. After hearing arguments from the

_____

3. Among other steps, Developer had previously obtained County approval to rezone these two parcels. However, after a group of local residents obtained enough unverified petition signatures to potentially place a referendum regarding the propriety of that rezone on the 2020 election ballot, but before those signatures were officially verified, the County repealed the rezone at Developer's request.

appellants and from Developer, a majority of the Council denied both appeals on their merits, with one member dissenting.

¶7      Shortly thereafter, the Association—on its own—filed a petition in district court seeking review of the Council's decision. No other individual or entity joined the Association's petition, and no other individual or entity separately sought judicial review. In its petition, as amended, the Association stated two "causes of action." First, it invoked Utah's Land Use Development and Management Act (LUDMA), as applicable to counties. *See* Utah Code Ann. §§ 17-27a-101 to -1104 (LexisNexis 2017 & Supp. 2022). Pursuant to LUDMA, a county's land use decisions may be challenged in court, but the court will uphold such decisions unless they are either (a) "arbitrary and capricious" or (b) "illegal." *See id.* § 17-27a-801(3)(b) (Supp. 2022). In its first cause of action, the Association asserted that the Council's decision was illegal because it espoused "an erroneous interpretation of the law" regarding both state statutes and county ordinances, and was therefore "outside" the County's "authority or jurisdiction." Second, the Association made a claim for declaratory relief, asking for a judgment "declaring that [the County's] conduct is in violation of the Utah Constitution, Utah statutes, and Tooele County land use ordinances."

¶8      The County responded by filing a motion to dismiss the Association's petition, asserting that the district court lacked subject matter jurisdiction over the petition because the Association had failed to exhaust its administrative remedies, a requirement imposed by LUDMA. *See id.* § 17-27a-801(1). The Association had not filed its own administrative appeal and, as the County saw it, the Association could not satisfy the statutory exhaustion requirement by pointing to the fact that some of its members had participated in appeals individually. And as for the Association's declaratory judgment claim, the County argued that, because that claim sought the same sort of relief—reversal of the conceptual approvals—as its LUDMA claim did, the

Association was required to comply with LUDMA's jurisdictional prerequisites to assert that claim as well.

¶9 The Association opposed the County's motion, making two general arguments in response. It first maintained that, under the doctrine of associational standing, it was entitled to rely on the appeals in which some of its members had participated, and need not have separately filed its own appeal in order to have exhausted its administrative remedies. Second, and in the alternative, the Association argued that it should be excused from any exhaustion requirement due to the allegedly "unusual circumstances" of this case, which the Association asserted militated in favor of the application of one or more judicially created exceptions to the exhaustion requirement. Specifically, the Association contended that "barring judicial review in this case on these grounds [would] result in the likelihood of injustice"; that "exhaustion would serve no purpose, or [was] futile, given that the members fully exhausted the administrative process with a futile result"; and finally, that the County had "acted outside of the scope of its defined, statutory authority." But the Association's arguments regarding "unusual circumstances" were not well-developed; its arguments regarding the "outside the scope" exception, for instance, were limited to two sentences stating that "this case centers on whether [the Commission] has acted outside the scope of its defined, statutory authority," and stating that the Association, in its petition, was asking the court "to determine questions of construction or validity arising under the statutes and ordinances at issue in this case." And at oral argument on the County's motion, the Association made no mention of any exceptions to the exhaustion requirement, instead focusing on its argument that it had actually satisfied the exhaustion requirement through the appeal filed by some of its members.

¶10 After briefing and oral argument, the district court denied the County's motion. The court announced its decision in an oral ruling, which was later memorialized in a written order. The

court agreed with the County regarding the Association's "associational standing" argument, explaining in its oral ruling that "[a]ssociational standing and the requirement to exhaust administrative remedies are two different and distinct legal concepts." The court concluded that, in order to satisfy the exhaustion requirement, the Association needed to have filed its own administrative appeal, and that the doctrine of associational standing could not "be used to satisfy" the exhaustion requirement when no such appeal had been filed.

¶11 On the question of whether any exceptions to the exhaustion requirement applied, however, the court sided with the Association and concluded that "at least one exception" would apply if the facts as alleged by the Association turned out to be true. In particular, the court determined that the Association had "established at this stage" that the exception for cases in which municipal authorities had acted "outside the scope of [their] defined statutory authority" might apply in this case. In reaching this determination, the court made reference to the Association's allegation that the Council had "violated Tooele County ordinances and [LUDMA], and in essence acted outside its statutory authority by" approving Developer's applications. The court then concluded by stating that, "[b]ased on these facts, [the Association has] successfully alleged an exception to the exhaustion requirement, specifically that an administrative agency or officer has acted outside of the scope of its defined statutory authority."

¶12 In its oral ruling, the court also noted that "there was an appeal" by the 125 Erda residents as well as "a review by [the Council] of [the Commission's] decision," and that "[t]he reasons for requiring exhaustion of administrative remedies have been accomplished" in light of the fact that the Council "was given an opportunity to review [the Commission's] decision and it was given an opportunity to self-correct" and "a record was created here to allow for judicial review." But the court's written order

did not include these thoughts, and instead focused entirely on the "outside the scope of authority" exception.

¶13   Based on its conclusion that, at least at this procedural stage, the Association had alleged facts sufficient to support the conclusion that an exception to the exhaustion requirement applied, the court denied the County's motion to dismiss.

## ISSUE AND STANDARD OF REVIEW

¶14   We granted the County leave to take an interlocutory appeal from the denial of its motion to dismiss. "We review the district court's denial of [a] motion to dismiss for correctness, granting no deference to the district court's ruling." *First Equity Fed., Inc. v. Phillips Dev., LC*, 2002 UT 56, ¶ 11, 52 P.3d 1137 (quotation simplified); *see also Nebeker v. Utah State Tax Comm'n*, 2001 UT 74, ¶ 12, 34 P.3d 180 (reviewing for correctness the court's dismissal of the plaintiff's petition for failure to "exhaust his administrative remedies"); *Republic Outdoor Advert., LC v. Utah Dep't of Transp.*, 2011 UT App 198, ¶ 12, 258 P.3d 619 ("[W]hether a court lacks subject matter jurisdiction due to a party's failure to exhaust administrative remedies is a question of law, reviewed for correctness.").

## ANALYSIS

¶15   In its appeal, the County challenges the district court's conclusion that, based on the facts alleged in the Association's petition, the "outside the scope" exception to the exhaustion requirement might apply here. The Association disagrees, and asks us to affirm the district court's conclusions in that regard. In the alternative, the Association asks us to affirm the court's denial of the County's motion to dismiss on various other grounds. In particular, the Association maintains that, because some of its

members were involved in the administrative appeals that were filed, it should be considered—through application of the doctrine of associational standing—to have exhausted its administrative remedies. And it asserts that two other exceptions to the exhaustion requirement—in addition to the "outside the scope" exception—apply in any event.

¶16 We begin our analysis with a general discussion of the requirement that parties exhaust their administrative remedies before seeking judicial relief. We then address—and reject—the Association's argument that it should be considered to have exhausted its administrative remedies because some of its members participated in the administrative appeals. Finally, we discuss the potential application of various exceptions to the exhaustion requirement, and conclude that none of them could apply here, even if the facts as alleged by the Association are true.

I

¶17 The requirement that parties exhaust their administrative remedies before seeking judicial review of administrative action is an important one that serves multiple purposes. First and foremost, the exhaustion requirement "allow[s] an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Western Water, LLC v. Olds*, 2008 UT 18, ¶ 18, 184 P.3d 578 (quotation simplified). Relatedly, the requirement helps ensure that the administrative decision that eventually comes before a court for review is the agency's final word on the matter. *See Continental Air Lines, Inc. v. Civil Aeronautics Board*, 522 F.2d 107, 125 (D.C. Cir. 1974) (noting that "[t]he interest in postponing review is strong if the agency position whose validity is in issue is not in fact the agency's final position," and that "[i]f the position is likely to be abandoned or modified before it is actually put into effect, then its review wastes the court's time and interferes with the process by which the

agency is attempting to reach a final decision"); *see also Summerhaze Co., LC v. FDIC*, 2014 UT 28, ¶ 14, 332 P.3d 908 (noting that "[o]ne purpose of" the exhaustion requirement is "the avoidance of premature interruption of the administrative process," and stating that "courts should not interfere with an agency until it has completed its action" (quotation simplified)). In short, the exhaustion "requirement 'serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency.'" *Culbertson v. Board of County Comm'rs*, 2001 UT 108, ¶ 28, 44 P.3d 642 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)), *overruled on other grounds by Madsen v. JPMorgan Chase Bank, NA*, 2012 UT 51, 296 P.3d 671.

¶18    Moreover, in situations where "adjudicative authority" over a "claim is specifically delegated to" a municipality or administrative agency, the exhaustion requirement is more than just a matter of convenience: it implicates a reviewing court's subject matter jurisdiction. *See Ramsay v. Kane County Human Res. Special Service Dist.*, 2014 UT 5, ¶ 9, 322 P.3d 1163. Utah district courts, of course, have general jurisdiction over "all matters except as limited by the constitution or by statute." *See id.* (quotation simplified); *see also* Utah Code Ann. § 78A-5-101(2)(a) (LexisNexis Supp. 2022). But where a matter has been statutorily delegated to a municipality or agency, "a party seeking relief must exhaust all administrative remedies available before seeking judicial review," *see Ramsay*, 2014 UT 5, ¶ 9, and if this "precondition to suit is not satisfied, courts lack subject matter jurisdiction" to consider a party's claim, *see Housing Auth. v. Snyder*, 2002 UT 28, ¶ 11, 44 P.3d 724.

¶19    As relevant here, our legislature has delegated authority over land use and zoning decisions to county decision-making bodies. *See* Utah Code Ann. § 17-27a-102(1)(b) (LexisNexis Supp. 2022) (authorizing counties to "enact all ordinances, resolutions, and rules" regarding "land use controls"). In particular, it has commanded counties to "establish one or more appeal

authorities" to "hear and decide," among other things, "appeals from land use decisions applying land use ordinances." *See id.* § 17-27a-701(1). In this context, then, our legislature has specifically delegated adjudicative authority over land use decisions to counties, and where "such authority has been delegated," an exhaustion requirement exists that implicates a court's subject matter jurisdiction. *See Ramsay*, 2014 UT 5, ¶ 9; *see also id.* ¶ 8 ("[T]he requirement that a party exhaust administrative remedies before seeking judicial review is a matter of subject matter jurisdiction."). Thus, in LUDMA cases, the exhaustion requirement is jurisdictional; where a party has not exhausted its administrative remedies, its petition for judicial review must be dismissed. *See Patterson v. American Fork City*, 2003 UT 7, ¶ 16, 67 P.3d 466 (noting that if a party "fails to exhaust . . . administrative remedies prior to filing suit, the suit must be dismissed").

¶20 When the administrative exhaustion requirement was first articulated, it was a judicially created doctrine. *See, e.g.*, *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 & n.9 (1938) (describing the requirement as "one of judicial administration"). But over time, legislative bodies have also recognized the benefits of requiring parties to exhaust their administrative remedies before seeking judicial relief, and in certain contexts have passed statutes containing an express statutory exhaustion requirement. *See, e.g.*, *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (discussing both judicial and statutory exhaustion requirements).

¶21 The specific exhaustion requirement at issue here is statutory, as set forth in LUDMA. There, our legislature made the requirement quite literally personal, stating as follows:

> No *person* may challenge in district court a land use decision until *that person* has exhausted *the person's* administrative remedies as provided in Part 7, Appeal Authority and Variances, if applicable.

Utah Code Ann. § 17-27a-801(1) (emphasis added). The term "person" is, in this context, statutorily defined to include "association[s]." *See id.* § 17-27a-103(51). And in "Part 7," the statute directly states that, "[a]s a condition precedent to judicial review, *each adversely affected party* shall timely and specifically challenge a land use authority's land use decision, in accordance with local ordinance." *Id.* § 17-27a-701(2) (emphasis added). LUDMA's exhaustion requirement—unlike some other statutory requirements[4]—contains no exceptions. *See id.* § 17-27a-801(1). On its face, it requires all persons, in all cases, to exhaust their administrative remedies before seeking judicial relief.

¶22      In cases like this one, "[w]here the legislature has imposed a specific exhaustion requirement," our supreme court has indicated that it "will enforce [that requirement] strictly." *See Salt Lake City Mission v. Salt Lake City*, 2008 UT 31, ¶ 6, 184 P.3d 599 (quotation simplified). But despite this pronouncement, our supreme court has continued to consider and apply several judicially created exceptions to the exhaustion requirement, even in LUDMA cases in which the exhaustion requirement is statutory and contains no exceptions.[5] *See id.* ¶¶ 6, 11 (applying an

---

4. For instance, the exhaustion requirement contained in Utah's Administrative Procedures Act includes exceptions for cases in which "the administrative remedies are inadequate" and in which exhaustion "would result in irreparable harm disproportionate to the public benefit derived from requiring exhaustion." *See* Utah Code Ann. § 63G-4-401(2)(b) (LexisNexis 2019).

5. We wonder about the propriety of applying judicially created exceptions to an exceptionless statutory exhaustion requirement. *See Ross v. Blake*, 578 U.S. 632, 639–40 (2016) (drawing a distinction between a judicially created exhaustion requirement and a statutory exhaustion requirement, and concluding that statutory

(continued…)

apparently exceptionless statutory exhaustion requirement—from the version of LUDMA applicable to cities and towns—but nonetheless considering the applicability of various exceptions to the exhaustion requirement).

¶23    Those exceptions, as recognized by our supreme court, exist in four specific "unusual" situations: (1) where a party would sustain "irreparable injury" by having to exhaust its administrative remedies; (2) where "there is a likelihood of oppression or injustice" if a party were required to exhaust; (3) where "exhaustion would serve no purpose, or is futile"; and (4) where "an administrative agency or officer has acted outside the scope of its defined, statutory authority." *See id.* ¶ 11.

¶24    The Association asserts that exceptions to the exhaustion requirement can potentially apply in other situations as well—

---

exhaustion requirements are not amenable to judicially created exceptions, even though "judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions"); *Information Res., Inc. v. United States*, 950 F.2d 1122, 1126 (5th Cir. 1992) (noting "a distinct difference between statutorily mandated exhaustion of administrative remedies and the judicially created doctrine of exhaustion of administrative remedies," and stating that "[w]hile courts may exercise discretion in applying the judicially created doctrine of exhaustion, such discretion is severely limited with respect to a statutory exhaustion requirement"). But no party argues here that the four recognized exceptions have no potential application to this case due to the statutory source of the exhaustion requirement. For that reason, and because our supreme court has applied these exceptions in LUDMA cases, *see, e.g.*, *Salt Lake City Mission v. Salt Lake City*, 2008 UT 31, ¶¶ 6, 11, 184 P.3d 599, we proceed to examine the applicability of these exceptions in this case, without additional commentary on the propriety of doing so in the face of an exceptionless statutory command.

beyond just the four situations listed in *Salt Lake City Mission*—so long as the case presents sufficiently "unusual circumstances." In support of this contention, the Association points to several cases in which our supreme court has used the phrase "unusual circumstances" to generally describe the situations in which exceptions to the exhaustion requirement might apply. *See, e.g.*, *id.* (noting "a number of exceptions to the exhaustion requirement in unusual circumstances" (quotation simplified)); *Nebeker v. Utah State Tax Comm'n*, 2001 UT 74, ¶ 14, 34 P.3d 180 ("Exceptions to [the exhaustion requirement] exist in unusual circumstances where it appears that there is a likelihood that some oppression or injustice is occurring such that it would be unconscionable not to review the alleged grievance or where it appears that exhaustion would serve no useful purpose." (quotation simplified)). But we do not interpret this case law as establishing a free-floating catch-all exception for "unusual circumstances." Instead, we interpret those cases as simply identifying four specific situations that are sufficiently unusual to justify a judicially created exception to the exhaustion requirement.

¶25 Our interpretation in this regard is guided by the fact that, in this case, the applicable exhaustion requirement is statutory. Our legislature has passed a law requiring each person who wishes to judicially challenge a county's land use decision to exhaust administrative remedies. *See* Utah Code Ann. § 17-27a-801(1). And unlike it did in enacting the Administrative Procedures Act, *see id.* § 63G-4-401(2)(b) (LexisNexis 2019), in enacting LUDMA the legislature did not include any exceptions to the exhaustion requirement, *see id.* § 17-27a-801(1). We have already noted our discomfort with applying, in this context, the four exceptions our supreme court has already enumerated. *See supra* note 5. We do not believe it appropriate for this court to recognize another one in this case, especially one as general as "unusual circumstances." *See Herland v. Izatt*, 2015 UT 30, ¶ 32, 345 P.3d 661 ("[I]t is not our prerogative to carve out exceptions to

[statutory] regime[s] established by the Utah Legislature."). Certainly, creation of such a broad exception would be at odds with our mandate to construe statutory exhaustion requirements strictly. *See Salt Lake City Mission*, 2008 UT 31, ¶ 6.

¶26   With this background in mind, we now turn to the specific arguments made by the parties in this appeal.

II

¶27   As noted, LUDMA expressly requires each "person" challenging "a land use decision" in court to have already exhausted that person's administrative remedies. *See* Utah Code Ann. § 17-27a-801(1). The Association acknowledges that it did not file an administrative appeal of the Commission's "conceptual approvals" prior to filing its petition for judicial review. Nevertheless, the Association takes the position that it should be deemed to have exhausted its administrative remedies because some of the individuals who participated in the administrative appeal process happen to be members of the Association. The district court rejected this argument, and so do we.

¶28   In advancing this argument, the Association invokes the doctrine of "associational standing." Under that doctrine, "[a]n association . . . has standing" to seek relief in court "if its individual members have standing" to do so "and the participation of the individual members is not necessary to the resolution of the case." *Utah Chapter of the Sierra Club v. Utah Air Quality Board*, 2006 UT 74, ¶ 21, 148 P.3d 960. In this case, because the Association sets forth facts asserting that some of its members "have a stake in the outcome of the dispute" regarding the propriety of the County's conceptual approval of Developer's applications, the Association may very well have had associational standing to file an administrative appeal challenging the County's decision. At least, the County does not now argue otherwise. But the possible existence of associational standing

does not relieve the Association of its obligation to exhaust its administrative remedies before seeking, on behalf of its members, judicial review of the County's land use decisions.

¶29   Indeed, as the district court correctly recognized, "[a]ssociational standing and the requirement to exhaust administrative remedies are two different and distinct legal concepts." An association can possess associational standing, yet still fail to exhaust its administrative remedies. And that is apparently what happened here. The Association may well have had associational standing to file an administrative appeal of the Commission's decision and, had it done so, it may have had the right—invoking the associational standing doctrine—to file a valid petition seeking, on behalf of its members, judicial review of the County's approval of Developer's applications. Alternatively, one or more of the individuals who filed the timely administrative appeals could have filed a petition for judicial review; these individuals were in a position to do so because they had challenged the Commission's decision with the Council and had thereby exhausted their administrative remedies. But the Association needs to satisfy *both* doctrines: associational standing *and* exhaustion of administrative remedies. The fact that it may well be able to satisfy the first does not operate to relieve it from its obligation to satisfy the second.[6]

---

6. The cases cited by the Association in support of its argument are not to the contrary. *See UAW v. Brock*, 477 U.S. 274, 281–89 (1986) (discussing exhaustion of administrative remedies only in passing, as part of considering whether a labor union could meet the first element of the associational standing test); *Southern Utah Wilderness All. v. San Juan County*, 2021 UT 6, ¶¶ 14–27, 484 P.3d 1140 (concluding that an environmental group had associational standing, without consideration of whether it had exhausted administrative remedies).

¶30 Under the governing statute, each "person" who challenges a county's "land use decision" in court must have exhausted that "person's administrative remedies." *See* Utah Code Ann. § 17-27a-801(1). And as noted, the term "person," as used here, includes "association[s]." *See id.* § 17-27a-103(51). Under the statute, then, the Association—as a "person"—was required to exhaust its own administrative remedies, and it cannot rely on the fact that some of its members participated in a timely administrative appeal.

### III

¶31 Because the Association failed to exhaust its administrative remedies, its petition for judicial review must be dismissed unless it can demonstrate that one of the established exceptions to the exhaustion requirement applies here. *See Ramsay v. Kane County Human Res. Special Service Dist.*, 2014 UT 5, ¶ 18, 322 P.3d 1163 (noting that it was the petitioners' "burden to establish that they should be excused from exhaustion"); *Patterson v. American Fork City*, 2003 UT 7, ¶ 16, 67 P.3d 466 (stating that if a party "fails to exhaust [its] administrative remedies prior to filing suit, the suit must be dismissed"). The district court concluded that, at least at this procedural stage, the Association had alleged facts sufficient to invoke the "outside the scope" exception to the exhaustion requirement. In addition, the Association asks us to consider the applicability of two other exceptions: futility and "oppression or injustice." We consider each of these three exceptions, in turn, and conclude that none of them apply to the facts as alleged here.

### A

¶32 We first consider the potential applicability of the "outside the scope" exception, even though it is listed as the fourth exception, because that is the exception the district court relied upon. That exception applies in cases where "an administrative agency or officer has acted outside the scope of its defined,

statutory authority." *See Salt Lake City Mission v. Salt Lake City*, 2008 UT 31, ¶ 11, 184 P.3d 599.

¶33 The Association concedes, as it must, that county land use officials—including the Commission and the Council—have statutory authority to consider and evaluate (and ultimately to grant or deny) zoning and other land use applications. Indeed, LUDMA gives counties broad power to "enact . . . ordinances, resolutions, and rules" regarding "land use controls," as the county deems "necessary or appropriate for the use and development of land" within the county, and provides that these land use controls may govern "uses," "density," "open spaces," and other "considerations of surrounding land uses to balance" the county's interests "with a landowner's private property interests and associated statutory and constitutional protections." *See* Utah Code Ann. § 17-27a-102(1)(b). LUDMA also requires counties to establish "a countywide planning commission," *see id.* § 17-27a-301(1)(a), as well as "one or more appeal authorities . . . [to] hear and decide . . . requests for variances" from land use ordinances and "appeals from land use decisions applying land use ordinances," *id.* § 17-27a-701(1). The County, through the Commission and the Council, was acting well within the scope of this general grant of authority when it reviewed Developer's applications and conceptually approved them. If we examine the "authority" question from a general, categorical perspective, the Association's position is quite clearly infirm.

¶34 Perhaps recognizing this, the Association asks us to view the "authority" issue from a granular, case-specific perspective. Even while acknowledging that the County has general authority to evaluate and rule upon land use applications, the Association asserts that the County incorrectly—and, in its view, illegally—granted Developer's applications. Among other arguments, the Association identifies the following asserted infirmities in the County's assessment of Developer's applications:

- The Association alleges that the County's approval violated Tooele County Land Use Ordinance 3-11, which states that "[a] final determination regarding an application to amend the zoning map shall preclude the filing of another application to amend the zoning map to reclassify the same parcel of property . . . within one year of the date of the final decision." Tooele County, Utah, Land Use Ordinance § 3-11. The Association believes that Developer's application constitutes "an application to amend the zoning map," and believes that Developer's earlier request for a rezone (*see supra* note 3), made less than a year before the applications at issue here, was too.

- The Association alleges that the County's approval violated Tooele County Land Use Ordinance 9-4, which requires "applicant[s]" to "participate in a pre-application conference with" county officials. Tooele County, Utah, Land Use Ordinance § 9-4. The Association alleges that no such "pre-application conference" ever took place.

- The Association alleges that the County's approval violated Tooele County Land Use Ordinance 9-6, which the Association interprets as requiring each application to contain certain items, some of which the Association asserts were not submitted with Developer's application.

- The Association alleges that the County failed to give proper notice—as it asserts is required by Tooele County Land Use Ordinances 7-4 and 7-11 and by section 205 of LUDMA—to the public regarding Developer's application and regarding the public hearing held regarding that application.

- The Association alleges that an owner of some of the property at issue withdrew its consent to Developer's application, and asserts that the County's approval in the face of this withdrawal violated Tooele County Land Use Ordinance 9-7, which the Association interprets as requiring "the owner's signed consent" before the County may move the application "forward into the next stage."

- The Association alleges that the County's approval of Developer's application violated Tooele County Land Use Ordinance 7-5, which contains requirements for approving conditional use permits. *See* Tooele County, Utah, Land Use Ordinance § 7-5. The Association asserts that the County erroneously "concluded [that] it must approve" Developer's applications, and that the County did not "tak[e] into consideration the multiple violations of law and consequent harm to its citizens."

- The Association alleges that the County's approval of Developer's application constitutes unlawful "spot zoning," in violation of Tooele County Land Use Ordinance 3-9.

The Association points out that some of these ordinances contain the word "shall," and argues that the County therefore had no "discretion" to approve the applications. In short, the Association asserts that, because the County's approval allegedly violated some of its own land use ordinances, some of which contain mandatory language (e.g., "shall"), the County acted "outside the scope of its defined, statutory authority," and therefore the Association was exempted from having to exhaust its administrative remedies before seeking judicial review.

¶35 But the Association's argument proves too much. Any person who challenges a county's land use decision must—in

order to win—prove that the county's decision is either (a) arbitrary and capricious or (b) illegal. *See* Utah Code Ann. § 17-27a-801(3)(b). And the arguments the Association mounts now, in support of its assertion that the County acted "outside the scope" of its authority for exhaustion purposes, are more or less the same arguments the Association made in its petition in support of its assertion that the County's actions were "illegal." If the Association's position were correct, and arguments like these were sufficient to assert that a county had acted "outside the scope" of its authority for exhaustion purposes, then no credible land use challenger would ever need to exhaust administrative remedies, because every such challenger must, by definition, assert that the county somehow acted unlawfully.

¶36   Indeed, our supreme court has already rejected the argument that the "outside the scope" exception to exhaustion is broad enough to cover circumstances like these. *See Salt Lake City Mission*, 2008 UT 31, ¶ 12 n.2. In that case, the entity challenging the municipal land use decision failed to exhaust its administrative remedies, but asserted that it was not required to do so because the municipality had acted "outside the scope of its defined, statutory authority." *Id.* In support of its contention, the entity asserted that the municipality had "issu[ed] an administrative interpretation letter without a request by the [entity] or payment of the fee—both of which are required under the relevant [municipal] ordinance." *Id.* The court rejected the entity's argument, and elected to construe the "authority" question at a broader, more categorical level. *See id.* The court stated that "[i]ssuing such a letter . . . is an action that falls within the [municipality's] authority," even if the municipality failed to strictly comply with the provisions of the ordinance governing such letters. *Id.* The court concluded by stating as follows: "That certain procedures may not have been followed, or requirements met, does not mean that the action falls without the agency's authority" for purposes of the exhaustion exception. *Id.*

¶37    Our supreme court has, in other contexts, also analyzed "authority" questions at a categorical level, rather than a granular one. In *State v. Gardiner*, for instance, the court considered whether a police officer who had conducted a search that was later determined to be illegal under the Fourth Amendment had acted within the scope of his authority while conducting the search. *See* 814 P.2d 568, 574–75 (Utah 1991). The court framed the question broadly, explaining that, in "interpreting the language 'scope of authority,' . . . the test is whether an officer is doing what he or she was employed to do or is engaging in a personal frolic of his or her own." *Id.* at 574 (quotation simplified). Applying that test to the facts of the case, the court concluded that the officer was indeed acting "within the scope of his authority as a peace officer" when he conducted the search, and "[t]he fact that his attempted search was later found to be unlawful does not divest him of his authority." *Id.* at 575.

¶38    Similarly here, County land use officials unquestionably have authority to review and consider zoning and land use applications, and they act within the course and scope of that authority when they grant or deny (or otherwise act) on those applications. And the mere fact that those same officials sometimes erroneously grant or deny some of those applications, and perhaps even incorrectly interpret or apply state law or county ordinances in so doing, does not operate to remove their actions from the scope of their authority.

¶39    Finally, examination of the case the Association relies on— *Walker Bank & Trust Co. v. Taylor*, 390 P.2d 592 (Utah 1964)—does not change our analysis. In that case, one local bank (Walker Bank) challenged an order of the Utah State Bank Commissioner allowing a competitor bank (State Bank of Provo) to "establish a branch bank" location, in addition to its main bank location, "in the city of Provo." *Id.* at 593. Walker Bank brought its challenge directly to district court and did not first file an administrative appeal with "the state board of examiners." *Id.* at 595. On that

basis, State Bank of Provo asked the court to dismiss the complaint for failure to exhaust administrative remedies. *Id.* The court rejected that argument, concluding that the governing statute gave the Bank Commissioner no discretion to grant State Bank of Provo's request because that statute prevented any "branch bank" from being established in any city in which there was already a bank unless the new bank was taking over the location of an already existing bank. *See id.* at 593–94. And because there was already a bank in Provo, including State Bank of Provo's main location, and because State Bank of Provo was not attempting to take over an existing bank, the court determined that, statutorily, the Bank Commissioner had no authority to allow State Bank of Provo to establish a "branch bank" in Provo. *Id.* at 595. On that basis, the court determined that Walker Bank was excused from exhausting its administrative remedies because the Bank Commissioner had acted outside the scope of his statutory authority. *Id.*

¶40 Thus, in *Walker Bank*, there was a substantive governing statute at issue, and there is nothing analogous at issue in this case; as noted, the Association points to LUDMA and various county land use ordinances, all of which have to do with matters unquestionably within the authority of county land use officials. But in addition, our analysis of *Walker Bank* is guided by two developments that have taken place in the nearly six decades since *Walker Bank* was decided. First, in *Salt Lake City Mission*, our supreme court considered—and distinguished—*Walker Bank* in the process of concluding that the fact "[t]hat certain procedures may not have been followed, or requirements met, does not mean that the action falls without the agency's authority." *See Salt Lake City Mission*, 2008 UT 31, ¶ 12 n.2. Our supreme court has therefore interpreted *Walker Bank* quite narrowly, and as materially distinguishable from situations like the one presented here. Second, our legislature has since enacted LUDMA, which includes the restrictive (and quite personal) statutory exhaustion

requirement. *See* Utah Code Ann. § 17-27a-801(1). As near as we can tell, there was no statutory exhaustion requirement at issue in *Walker Bank*. In light of these circumstances, we read *Walker Bank* narrowly, as our supreme court did in *Salt Lake City Mission*, and do not consider it particularly applicable to the situation presented here, especially in light of the explicit statutory exhaustion command.[7]

¶41 The County had statutory authority to consider and decide Developer's applications. Even if the Association were correct— and we offer no opinion on this question—that the County acted in contravention of LUDMA or county ordinance in approving those applications, it would at best amount to a showing that the County acted "illegally." *See id.* § 17-27a-801(3)(b)(ii). These facts, even if true, do not in this case constitute action "outside the scope of" the County's "defined, statutory authority" for purposes of the exhaustion requirement. *See Salt Lake City Mission*, 2008 UT 31, ¶¶ 11–12 & n.2. Thus, even assuming the Association's factual allegations to be true, as we must for purposes of this appeal, the Association cannot bear its burden of demonstrating that the County acted outside the scope of its authority in approving Developer's applications. Accordingly, the "outside the scope" exception to the exhaustion requirement has no application here, and the district court erred in concluding that it did.

B

¶42 We next consider the applicability of the so-called "futility" exception to the exhaustion requirement. As noted above, our

---

7. The other cases the Association cites in support of its position are also unhelpful, chiefly because none of them involve application of the exhaustion requirement or any of its exceptions. *See Toone v. Weber County*, 2002 UT 103, 57 P.3d 1079; *Preece v. House*, 886 P.2d 508 (Utah 1994); *Olson v. Salt Lake City School Dist.*, 724 P.2d 960 (Utah 1986).

supreme court has established an exception in cases where "exhaustion would serve no purpose, or is futile." *See Salt Lake City Mission*, 2008 UT 31, ¶ 11. The Association asks us to affirm the district court's ultimate conclusion on this alternative ground, asserting that the Council's denial of the administrative appeals filed by the 125 Erda residents demonstrates that any appeal by the Association would have been futile.

¶43    We acknowledge at the outset that the Association's argument has some facial appeal. The arguments the Association makes—listed herein, *see supra* ¶ 34—regarding the asserted unlawfulness of the County's approval of Developer's applications are similar to the arguments made by the Erda residents in the context of their administrative appeal, and the majority of the Council rejected those arguments. There may be little reason to believe that the outcome of the administrative appeal would have been any different had the Association signed on to that appeal as the 126th appellant.

¶44    But as we understand it, our supreme court has conceived of "futility" in this context in a narrow way, and that conception does not fit these facts. As that court has characterized it, "futility" exists in situations where "the entire administrative appeals process is inoperative or unavailable." *Patterson v. American Fork City*, 2003 UT 7, ¶ 20, 67 P.3d 466; *see also Salt Lake City Mission*, 2008 UT 31, ¶ 13 (rejecting a futility argument because the petitioner had "not shown that the City's administrative appeals process [was] inoperative"); *Hatton-Ward v. Salt Lake City Corp.*, 828 P.2d 1071, 1072 (Utah Ct. App. 1992) (applying the futility exception where the petitioner sought damages, fines, and attorney fees, but where the administrative appeal process, by statute, only allowed a single remedy: reinstatement). In this case, by contrast, the administrative appeal process was both available and operative, and the remedy the Association seeks—reversal of the Commission's decision to approve Developer's applications—

was unquestionably one the Council would have been able to provide, if it had been persuaded by the Association's arguments.

¶45   And we are ultimately persuaded by the County's argument that, if we applied the futility exception under the circumstances here, we would be expanding that exception to the point where it would swallow the rule. It cannot be the case that a denied administrative appeal filed by *anyone* renders futile any unfiled appeal by anyone else. Sometimes, one party is not situated similarly to another, with regard to standing or otherwise, and one party may be better positioned to mount an appeal. And even similarly situated parties sometimes make different arguments, or present the same arguments in better and more effective ways. It does not necessarily follow from the failure of one party's appeal that another's similar appeal will also fail.

¶46   But more to the point, applying the futility exception in these circumstances would be directly contrary to LUDMA's statutory command. As noted, LUDMA includes an explicit—and very personal—exhaustion requirement, commanding each "person" to exhaust "the person's administrative remedies." *See* Utah Code Ann. § 17-27a-801(1); *see also id.* § 17-27a-701(2) ("As a condition precedent to judicial review, each adversely affected party shall timely and specifically challenge a land use authority's land use decision."). If we were to allow any LUDMA petitioner to piggyback onto another person's denied administrative appeal for purposes of exhaustion, merely because we considered the petitioner's appeal similar to the denied one, we would effectively be excising from the statute the requirement that each "person" exhaust "the person's administrative remedies." *Id.* § 17-27a-801(1); *see also Herland v. Izatt*, 2015 UT 30, ¶ 32, 345 P.3d 661 ("[I]t is not our prerogative to carve out exceptions to [statutory] regime[s] established by the Utah Legislature."). Especially given how narrowly our supreme court has conceived of the "futility" exception generally, we decline the Association's invitation to apply that exception here.

C

¶47    Finally, we consider the applicability of the exception for cases in which "there is a likelihood of oppression or injustice." *See Salt Lake City Mission*, 2008 UT 31, ¶ 11. The Association asks us to affirm the district court's ultimate conclusion on this alternative ground, asserting in rather conclusory fashion that "[b]arring judicial review in this case . . . [would] result in oppression and injustice." In particular, the Association describes the County's alleged violations of state law and county ordinances—listed herein, *see supra* ¶ 34—as "shocking," and asserts that if the County's approval of Developer's applications is allowed to stand, the Association's members will be deprived of their rights and will suffer "degradation" of their "rural agricultural lifestyle."

¶48    But the Association misperceives the reach of this exception. For this exception to apply, it is the exhaustion requirement itself—and not the underlying issue—that must result in oppression or injustice. *See Christensen v. Utah State Tax Comm'n*, 2020 UT 45, ¶ 36, 469 P.3d 962 (rejecting the argument that the mere fact that a decision was unreviewable constituted irreparable harm, and stating that "[t]o accept [that] argument would mean that no one would need to exhaust their available remedies"); *cf.* Utah Code Ann. § 63G-4-401(2) (providing that, under the Utah Administrative Procedures Act, there is an exception to the exhaustion requirement where exhaustion "would result in irreparable harm disproportionate to the public benefit derived from requiring exhaustion"). The Association has not even attempted to show that it would have been oppressive or unjust for it to have had to exhaust its administrative remedies. And as we understand it, such a showing would be quite difficult for the Association to make, given that there appears to be no reason why the Association could not have filed an administrative appeal, or at least joined in the one filed by the Erda residents.

¶49 In sum, in order to properly invoke the "oppression or injustice" exception, a litigant must demonstrate that the exhaustion requirement itself—as distinct from the underlying grievance—resulted in oppression or injustice. And the Association has not made this showing. Instead, its arguments are aimed at the asserted injustice of the County's underlying approval of Developer's applications. None of its arguments are aimed at showing that it would have been oppressive or unjust for the Association to have had to file its own administrative appeal. We therefore decline the Association's invitation to apply the "oppression or injustice" exception to these facts.

CONCLUSION

¶50 The Association failed to exhaust its administrative remedies and—even assuming its alleged facts to be true—it has not carried its burden of demonstrating that any of the established exceptions to the exhaustion requirement could apply here. As a result, the district court had no subject matter jurisdiction to consider the Association's petition for judicial review, and it erred by denying the County's motion to dismiss. We therefore reverse the court's denial of the County's motion, and remand this case for entry of an order of dismissal.

————