**2024 UT App 162**

## THE UTAH COURT OF APPEALS

LIVING RIVERS,
Appellant,
*v.*
SAN JUAN COUNTY AND OLD TOWN, LLC,
Appellees.

Opinion
No. 20230411-CA
Filed November 7, 2024

Seventh District Court, Monticello Department
The Honorable Don M. Torgerson
No. 220700026

Christina R. Sloan, Attorney for Appellant

Douglas C. Shumway, Amy C. Walker, and Jens P.
Nielson, Attorneys for Appellees

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

OLIVER, Judge:

¶1  In 2022, the San Juan County Planning Commission (the Commission) approved Old Town, LLC's (Old Town) application for a conditional use permit for tent camping on a 240-acre property (the Property) in Upper Mill Creek Canyon. Living Rivers, a nonprofit corporation, filed an administrative appeal of the Commission's grant of the permit. The San Juan County Appeal Authority (the Appeal Authority) determined that Living Rivers lacked standing and dismissed the appeal. Living Rivers filed a petition for judicial review, and Old Town moved to dismiss. The district court granted the motion, concluding that associational standing was not available under the County Land Use, Development, and Management Act (CLUDMA), Utah Code section 17-27a-701 *et seq.*, and that Living Rivers lacked both

traditional and statutory standing under CLUDMA. While we conclude that the district court's determination that associational standing is unavailable under CLUDMA is erroneous, we nevertheless affirm the district court's dismissal of Living Rivers's petition for review for lack of statutory standing.

## BACKGROUND

¶2 In December 2021, Old Town applied for a conditional use permit from San Juan County to allow tent camping by students from Wyoming Catholic College (the College) on the Property in Upper Mill Creek Canyon. The Property is zoned for agricultural use and sits on the Glen Canyon aquifer, which is designated by the Environmental Protection Agency and the Utah Water Quality Board as a sole-source aquifer for the culinary water supply for over 10,000 residents of Grand County and the northern areas of San Juan County. Mill Creek, which passes through the Property, is a tributary of the Colorado River and Glen Canyon aquifer. Mill Creek's water serves as a backup source of culinary water for the City of Moab, Grand County Water and Sewer Service District, and San Juan County.

¶3 In January and February 2022, the Commission held two public hearings on Old Town's permit request. Members of the public, including Living Rivers's director (the Director), participated in both hearings.[1] At the close of public comment in

---

1. Living Rivers is a Utah nonprofit corporation focused on the management of surface and groundwater supplies in the Colorado River Basin, specifically the central part of the Colorado Plateau that spans Grand and San Juan counties. Living Rivers seeks to protect the Colorado River Basin's resources by funding monitoring activities and groundwater studies, retaining experts to inform decision-makers, and educating the public. Living Rivers relies on donations and pro bono services from its

(continued…)

the January meeting, the commissioners unanimously voted to table the permit so Old Town could provide more information about its agreement with the College, as well as more information about the fire risk and the access road.

¶4      At the February meeting, Old Town presented the agreement that allowed the College to use the Property for camping. The agreement had an attached Exhibit A, which included rules and regulations for the College's use of the Property, with rules related to campfires, water use, waste removal, campsite locations, group size, property access, and permitted activities. Old Town also provided more information in a written statement addressing some of the Commission's concerns from the January meeting. After allowing additional public comment on the application, the Commission unanimously approved the permit with the conditions listed in Exhibit A.

¶5      Living Rivers appealed the Commission's decision to the Appeal Authority. In its appeal, Living Rivers argued (1) overnight accommodations are not allowed as either a permitted or conditional use under San Juan County's zoning ordinance, (2) the Commission did not make the required written findings, and (3) the Commission's decision was not supported by substantial evidence. Old Town intervened in the action and moved to dismiss the appeal, which San Juan County joined, arguing Living Rivers lacked standing under CLUDMA. Living Rivers opposed the motion and provided a declaration from the Director, who is a resident of Grand County, in support of its standing. In addition to stating that the Director would personally suffer harm from the permit, the declaration described grants that Living Rivers had received to conduct research in the area, investments Living Rivers had made in monitoring and

---

members to accomplish its mission. Many of Living Rivers's members reside in Grand and San Juan counties.

protecting water sources in the region, and donations and pro bono hours contributed by volunteers. The declaration also stated the permit would harm members of Living Rivers who reside in Grand and San Juan counties due to

- "contamination of our sole source drinking water aquifer from human waste management";

- "contamination of Mill Creek surface water from human waste[,] . . . increased erosion, sedimentation, and other contaminants from egress/ingress through several creek crossings to access the [P]roperty";

- "significant harm to the Mill Creek watershed . . . from high wildfire potential and very limited to impossible access for firefighting and control";

- "[w]asted donations and efforts to ensure that public waters, including Mill Creek . . . will be protected from contamination."

¶6    The Appeal Authority dismissed Living Rivers's appeal, determining that Living Rivers lacked standing. The Appeal Authority found most of Living Rivers's allegations of harm were not different in kind or distinct from those of the general community. While the Appeal Authority did find that the wasted donations and conservation efforts by Living Rivers members were distinct allegations of harm, the Appeal Authority determined that the mitigation and supervision measures put in place by Old Town and the opportunity for Living Rivers to "support" San Juan County in the continuing land use regulation of the Property made the probability of harm low, concluding that Living Rivers failed to meet the statutory requirement of the harm being inevitable.

¶7    Living Rivers filed a petition for judicial review of the Appeal Authority's dismissal pursuant to CLUDMA, which provides that "a land use applicant or adversely affected party may file a petition for review of a land use decision with the district court within 30 days after the decision is final." Utah Code § 17-27a-801(2)(a). Old Town filed a motion to dismiss and for summary judgment that San Juan County joined, arguing Living Rivers was not an "adversely affected party" as defined by CLUDMA.

¶8    After hearing oral argument, the district court granted Old Town's motion to dismiss, concluding Living Rivers lacked both traditional standing and statutory standing under CLUDMA. The district court also concluded that CLUDMA does not allow for associational standing.

ISSUE AND STANDARD OF REVIEW

¶9    Living Rivers contends the district court erroneously granted Old Town's motion to dismiss. We review a district court's "grant of a motion to dismiss for correctness, granting no deference to the decision of the district court." *Gregory v. Shurtleff*, 2013 UT 18, ¶ 8, 299 P.3d 1098 (cleaned up).

ANALYSIS

¶10    Living Rivers presents three arguments on appeal. First, Living Rivers argues the district court erred by determining that CLUDMA does not have a mechanism for associational standing, which would require Living Rivers to establish its own standing separate from its members. Living Rivers next argues the district court erred by requiring the associational standing of a nonprofit's members to be pled by affidavits from the members themselves instead of by a declaration by an executive of the nonprofit. Finally, Living Rivers argues the district court erred in

determining "[a] non-profit organization cannot prove distinct and palpable injuries of its members without assigning specific injuries to specific members by name." We address these arguments below.

## I. Standing

¶11 "In Utah, . . . standing is a threshold jurisdictional requirement." *McKitrick v. Gibson*, 2021 UT 48, ¶ 17, 496 P.3d 147 (cleaned up). When seeking relief under a Utah statute or alleging that statutory requirements were violated, "statutory standing is an initial 'hurdle' that a plaintiff must clear before a court proceeds to examine whether the plaintiff has shown traditional standing." *Bleazard v. City of Erda*, 2024 UT 17, ¶ 43, 552 P.3d 183; *see also Erda Cmty. Ass'n v. Grantsville City*, 2024 UT App 126, ¶¶ 25–26 (stating that "claimants must demonstrate *both* statutory standing *and* traditional standing" when bringing an action pursuant to statute). The standing analysis thus begins with statutory standing, with traditional standing only assessed "if statutory standing is present." *Grantsville City*, 2024 UT App 126, ¶ 28.[2]

### A.      Associational Standing Under CLUDMA

¶12 Under CLUDMA, "an adversely affected party may" appeal the decisions of a land use authority "by alleging that there is error in any order, requirement, decision, or determination made by the land use authority." Utah Code § 17-27a-703(1). The term "adversely affected party" is statutorily defined by CLUDMA as "a person" who either "(a) owns real property adjoining the property that is the subject of a land use application or land use decision" or "(b) will suffer a damage different in kind

---

2. Living Rivers asserts only statutory claims under CLUDMA. Therefore, because we find that Living Rivers does not have statutory standing under CLUDMA, we need not reach the issue of whether Living Rivers has traditional standing.

than, or an injury distinct from, that of the general community as a result of the land use decision." *Id.* § 17-27a-103(2).[3] "Person" under CLUDMA is defined broadly to mean "an individual, corporation, partnership, organization, association, trust, governmental agency, or any other legal entity." *Id.* § 17-27a-103(52). Living Rivers, a nonprofit corporation, is therefore a "person" under CLUDMA. And in *Tooele County v. Erda Community Ass'n*, 2022 UT App 123, 521 P.3d 872, this court held that an association that met the definition of a person under CLUDMA could have associational standing if the association's "individual members have standing" and "participation of the individual members is not necessary to the resolution of the case." *Id.* ¶¶ 28–30 (cleaned up).

¶13 Forbidding a corporation like Living Rivers from establishing associational standing through its members under CLUDMA would go against the language of the statute that allows all "person[s]"—which expressly includes corporations— who are adversely affected to appeal land use decisions. Utah Code § 17-27a-103(2), (52). Therefore, we confirm that associational standing is available under CLUDMA, and organizations that seek to establish statutory standing do not need to establish statutory standing independent of their members.

¶14 Old Town and San Juan County (collectively, Appellees), however, rely on *Tooele County* in arguing on appeal that Living Rivers nevertheless does not have standing under CLUDMA because Living Rivers's individual members had not exhausted their administrative remedies as required by CLUDMA. *See id.*

---

3. Utah Code section 17-27a-103 was amended after Living Rivers filed its appeal of the Commission's decision to the Appeal Authority. *Compare* Utah Code § 17-27a-103, *with id.* § 17-27a-103 (2021). Because the amendments are immaterial to the dispute in front of us, we cite the current version of the code for convenience.

§ 17-27a-703(1).[4] Appellees are correct that in *Tooele County*, we held that because the association itself failed to exhaust its administrative remedies under CLUDMA, the district court lacked subject matter jurisdiction over the association's appeal. *See* 2022 UT App 123, ¶¶ 28–30, 50. However, the facts here are distinguishable.

¶15    In *Tooele County*, the Tooele County Planning Commission approved two applications from a developer for conditional use permits "to develop two parcels of land." *Id.* ¶ 4. In response, over one hundred residents of Erda, in their individual capacities, signed the administrative appeals of the Tooele County Planning Commission's approvals. *Id*. ¶ 5. And while some of the individuals who signed the administrative appeal in their individual capacity were members of the Erda Community Association, the association itself was not "listed as a party to either of [the administrative] appeals." *Id*. After the administrative appeals were denied on their merits, *id*. ¶ 6, the Erda Community Association "filed a petition in district court seeking review" of the administrative appeals, but notably none of the individuals who signed the administrative appeals joined the judicial review petition or "separately sought judicial review," *id*. ¶ 7. Because none of the individuals who signed the administrative appeals joined the petition for review in district court and because the association itself did not timely seek

---

4. Although Living Rivers did not argue that Appellees failed to preserve the issue of whether Living Rivers had exhausted its administrative remedies, we have serious misgivings about its preservation. But "because our preservation requirement is self-imposed . . . and one of prudence rather than jurisdiction," we choose to exercise our "wide discretion when deciding to entertain or reject matters that are first raised on appeal[,]" and decide this issue on the merits because we can easily do so. *Fort Pierce Indus. Park Phases II, III & IV Owners Ass'n v. Shakespeare*, 2016 UT 28, ¶ 13, 379 P.3d 1218 (cleaned up).

administrative review, we concluded that the district court did not have subject matter jurisdiction over the case. *Id.* ¶ 29.

¶16 Here, unlike in *Tooele County*, the same party—Living Rivers—participated in both the administrative appeal of the permit and the judicial appeal. As the Appellees pointed out in their brief, CLUDMA requires a person to "exhaust[] the person's administrative remedies," Utah Code § 17-27a-801(1), by filing an "appeal [of] that decision to the appeal authority" before challenging a land use decision in district court, *id.* § 17-27a-703(1). As we discussed previously, *see supra* ¶¶ 12–13, Living Rivers meets the definition of "person" under CLUDMA because it is a nonprofit *corporation*. *See* Utah Code § 17-27a-103(52) (stating a "person" can be "an individual, corporation, partnership, organization association, trust, government agency, or any other legal entity"). Therefore, because Living Rivers filed both the administrative appeal and the challenge in district court, Living Rivers properly exhausted its required administrative remedies.

B.     Statutory Standing Under CLUDMA

¶17 Having determined that Living Rivers may assert associational standing under CLUDMA, we now turn to whether Living Rivers has established statutory standing. Only "land use applicant[s], board[s] or officer[s] of the county, [and] adversely affected part[ies]" have statutory standing to appeal a land use authority's decision under CLUDMA. Utah Code § 17-27a-703(1). An "adversely affected party" is "a person other than a land use applicant" that "(a) owns real property adjoining the property that is the subject of a land use application or land use decision; or (b) will suffer a damage different in kind than, or an injury distinct from, that of the general community as a result of the land use decision." *Id.* § 17-27a-103(2).

¶18 Here, neither Living Rivers itself nor any of its members own land adjoining the Property, so Living Rivers must

demonstrate that Living Rivers itself or its members "will suffer a damage different in kind," or "distinct from, that of the general community." *Id.* § 17-27a-103(2)(b). To be distinct from that of the community at large, the injury to the party must be "sufficiently particularized to give [the] party a personal stake in the outcome of the dispute." *Cedar Mountain Env't, Inc. v. Tooele County ex rel. Tooele County Comm'n*, 2009 UT 48, ¶ 9, 214 P.3d 95 (cleaned up), *abrogated on other grounds by McKitrick v. Gibson*, 2021 UT 48, 496 P.3d 147. For an injury to be sufficiently particularized, it does not need to be so unique that it is not shared by others, for "as long as the injury has a direct effect on the complaining party, . . . others may also share their concerns and be subject to the same specific, individualized injuries." *Id.* (cleaned up); *see also Utah Chapter of the Sierra Club v. Utah Air Quality Board*, 2006 UT 74, ¶ 23, 148 P.3d 960 (holding that videographer's and farmer's allegations that pollution from "plant operation[] will damage their livelihoods are not generalized to everyone in the area" because not everyone in the area relies on the area's "environmental quality to make a living"). But if the injury "is a general injury to the community, the party does not have a personal stake in the dispute" and therefore does not have statutory standing to bring a suit. *Cedar Mountain*, 2009 UT 48, ¶ 9; *see also Sierra Club,* 2006 UT 74, ¶ 27 (finding it questionable whether a party whose "affidavit expresse[d] general concerns about [pollution from] the plant" and the adverse effects of "the deterioration of visibility" sufficiently asserted a "particularized injury"). "Expressions of concern, without a claim of actual or potential injury to the party, are too generalized to qualify as a distinct and palpable injury." *Sierra Club*, 2006 UT 74, ¶ 27.

¶19   In the Director's affidavit, Living Rivers asserted three injuries that its members would suffer and one injury the nonprofit itself and its donors would suffer as a result of the Commission's grant of Old Town's permit. Living Rivers's first three allegations—which asserted contamination of the aquifer, contamination of Mill Creek surface water, and harm to the Mill

Creek watershed due to wildfire potential—are all general in nature, and Living Rivers does not distinguish how these alleged harms impact its members differently from the community members at large. Unlike *Sierra Club*, where two individuals asserted that increased pollution from a plant operation would distinctly impact their specific livelihoods, Living Rivers has not explained how the risk of contamination of the aquifer and Mill Creek or the increased fire risk impacts its members differently from the community at large. *See id* ¶¶ 23, 27.[5] Indeed, risks of contaminated water and increased wildfire potential are among the most generalizable harms to the community at large because all community members would suffer if they lost access to drinking water through contamination or were harmed by wildfires. Therefore, Living Rivers has not established that the first three harms to its members are sufficiently particularized to provide Living Rivers with statutory standing under CLUDMA on behalf of its members.

¶20　Living Rivers's fourth alleged injury involving "[w]asted donations and efforts to ensure that . . . Mill Creek . . . [is] protected from contamination" may be particularized enough because it is a lost monetary investment made by a particular group—Living Rivers—and its specific donors rather than the community at large. *See id.* ¶ 23 (holding that allegations of harm were sufficient for statutory standing where they were specific to two individuals and were "not generalized to everyone in the area"). However, even if this harm was particularized enough to be distinct from harm to the general community, to meet the definition of an adversely affected party under CLUDMA, Living

---

5. On appeal, Living Rivers argues that affidavits from individual members of an association are not required for the association to demonstrate standing under CLUDMA. However, we need not address this issue because even if individual members of Living Rivers alleged the first three injuries, they would still be too general to establish the required particularized injury.

Rivers must also demonstrate that either it or its members who are donors own or occupy property in San Juan County.[6] *See Cedar Mountain*, 2009 UT 48, ¶ 10 ("Specific to land use cases, we have determined that to have a personal stake in the outcome of a land use decision, a party must own or occupy property within the jurisdiction of the decision-making body."). It has failed to do so.

¶21   First, in its reply brief, Living Rivers argues that "installation of a stream gage and funding of watershed planning studies" are improvements and investments into property in San Juan County that should be considered along with the residency of Living Rivers members in determining whether Living Rivers owns or occupies property in the jurisdiction. We are not persuaded that installation of a single stream gage and expending resources to fund a watershed planning study is the same as owning or occupying a parcel of property in the county. *See O'Connor v. Board of Zoning Appeals*, 98 A.2d 515, 517–18 (Conn. 1953) (finding that landowners and residents who do not own land but pay taxes to the town can be an "aggrieved" party with statutory standing to appeal a zoning decision (cleaned up)), *cited with approval in Lund v. Cottonwood Meadows Co.*, 392 P.2d 40, 42 (Utah 1964). Accordingly, Living Rivers cannot establish that the nonprofit itself owns or occupies property.

¶22   Second, Living Rivers alleged it has members who reside in San Juan County, and it has received donations from members that will be wasted if the permit is approved. But Living Rivers has failed to connect the dots between the two. It is insufficient to satisfy the *Cedar Mountain* requirement of owning or occupying land in the jurisdiction by stating that you have members who own or occupy land in the jurisdiction and also have members

---

6. Living Rivers stated in its reply brief that it "does not challenge the district court's ruling that a party must own or occupy property within the jurisdiction of the decision-making body in land use cases."

who will be harmed by their wasted donations without specifically identifying that the individual members who will be harmed via their wasted donations are the same members who own or occupy land within the county. Without this specificity, we have no way of knowing whether any of the Living Rivers donors who will potentially suffer a sufficiently particularized harm through their wasted donations are the same members who reside in San Juan County.[7] As a result, Living Rivers has failed to establish that it is an adversely affected party through its members.

¶23    In sum, we conclude that Living Rivers does not have statutory standing under CLUDMA because the potential harms of contamination and wildfire damage are shared with the general community, the corporation itself does not own or occupy land in San Juan County, and Living Rivers failed to connect the potential harm of wasted donations from its members to the members who reside in San Juan County.

CONCLUSION

¶24    We conclude the district court erred in ruling that associational standing is not available under CLUDMA, but we nevertheless affirm the district court's dismissal of Living Rivers's petition for review because Living Rivers has failed to demonstrate that it has statutory standing.

——————

7. We do not decide whether such an allegation of potential harm would be sufficient to establish statutory standing under CLUDMA, *see* Utah Code § 17-27a-103(2)(b), and leave the question for a future case when the issue is squarely presented, *see Keisel v. Westbrook*, 2023 UT App 163, ¶ 52 n.9, 542 P.3d 536 ("[W]e leave open the possibility that, if some future case arises in which these [issues] are better presented, we may consider them anew."), *cert. denied*, 554 P.3d 1097 (Utah 2024).